Wheeler, J.
The principal inquiry in this case is as to the legality and validity of the distribution made of the property in the State of Alabama. This will depend upon the power of the parties to dispose of their respective interests in the estate, and the intrinsic fairness of the transaction.
The intervention of trustees did not render the estate or interest vested in the plaintiffs, as beneficiaries, inalienable. In general, the cestui que trust or beneficiary in a trust estate may convoy his interest at pleasure, as if lie were the legal owner. (4 Kent Comm., 304.)
The terms employed in the will to describe the estate bequeathed to Mrs. Nimmo and her children are, that “ the profits arising from the aforesaid property, either by hiring or otherwise, shall be applied to the benefit of the said Rhoda Niinmo and her children,” to be enjoyed by the said Rhoda during her natural life, and after her death to be equally divided among the heirs of her body, her husband to be provided for in a certain event.
The first question which naturally presents itself is, did the will create a separate estate iti Mrs. Mmmo? Does the conveyance of an estate to trustees for the benefit of a married woman and the heirs of her body confer upon her an estate separate from her husband?
As the common law was the rule of decision in Alabama, the questions arising in the case must be determined by the principles administered in its courts of law and equity.
“Under what circumstances,” says Story, “property given, secured, or bequeathed to the wife will be deemed a trust for her separate and exclusive use is a matter which, upon the authorities, involves some nice distinctions. There is no doubt that when, from the terms of the gift, settlement, or bequest, the property is expressly or by just implication designed to be for her separate and exclusive use, (for technical words are not necessary,) the intention will be fully acted upon, and the rights and interests of the wife sedulously protected in equity. But the question whicli most frequently arises is, what words are sufficiently expressive of such a purpose? For che purpose must clearly appear beyond any reasonable doubt; otherwise the husband will retain his ordinary legal and marital rights over it.” (2 Story Comm. Eq., sec. 1381.)
The learned commentator instances a variety of words and expressions in instruments, which have been held to manifest an unequivocal intent to exclude the power and marital rights of the husband, and consequently to create a trust for the separate use of the wife. (Id., sec. 1382.)
“ On the other hand,” he says, “ a gift or bequest after marriage to a married woman ‘for her own use and benefit,’ or to pay the same ‘into her own *16 proper hands to and for her own use and benefit,’ or to pay an annuity ‘ into her proper hands for her own proper use and benefit,’ have been held not to amount to a sufficient expression of an intention to exclude the marital rights of the husband; for although the money is to be paid into her own hands, or to her own use, yet there is nothing in that inconsistent witii its being subject to his marital rights.” (Id., sec.'l383.)
The language of the bequest, in the present case, comes within the very terms here employed: for the ‘"benefit” of the wife and children. There are no words expressive of an intention that the bequest shall be for the exclusive use of the wife; and to constitute it such, as we have seen, that purpose ‘"must clearly appear beyond any reasonable doubt; otherwise, the husband will retain his ordinary, legal, and marital rights over it.”
On the contrary, it seems to have been the intention of the testator to provide not only for the wife and children, but also for the husband. It does not appear that the testator ever liad possession of the property; but the possession appears to have been in Mrs. Nimmo and her husband at and after the date of the will and the death of the testator.
Upon the principles .stated and the authorities cited by Mr. Justice Story it would seem that the wife was not invested with a separate estate in the property bequeathed, but that, upon the death of the testator, the marital rights of the husband attached to the extent of the wife’s interest, and that, by the well-settled principles of the common law, he acquired the absolute power of disposition over it. For by the common law the husband becomes entitled, in virtue of the marriage, to all the personal estate of the wife. If in possession, it vests immediately in the husband. (Id., ch. 37; 2 Kent Comm., sec. 2S; 7 Ala. R., N. S., 32, 34.)
The precise question we are considering was before the Supreme Court of Alabama, in the case of O’Neil v. Teague, (8 Ala. R. N. S., 345,) and it was decided that a conveyance of slaves to trustees for the “ benefit ” of a married woman and the heirs of her body did not confer upon her an estate separate from her husband; but that the property so conveyed being in the possession of the husband, the wife’s interest was subject to seizure and sale under an execution against his estate. After having examined several of the English and American authorities and decisions on the subject, Chief Justice Collier says : “From this view of the law it sufficiently appears that a gift to trustees for the benefit of a married woman and her heirs does not impart an interest to her beyond the control and dominion of her husband. There is no peculiar potency in the word ‘ benefit ’ which the terms ‘ in trust for ’ and ‘ for the use of ’ do not possess. Every gift, either to a third person directly or in trust for him, is for his benefit, whether or not it is so declared in totidem verbis; and the word, so far as the legal effect of the instrument is concerned, is a mer-e expletive, neither limiting or enlarging the estate of the beneficiary. If, however, the isolated expressions were of equivocal import, as it respects the donor’s intention, the declaration that the husband and wife should retain the possession of the slaves during coverture and the life of the latter, very satisfactorily shows that it was not intended to exclude the husband from the enjoyment of the property during the life of the wife «ir so long as he might live with her.” (8 Ala. R., N. S., 351, 352.)
These observations are applicable to the case under consideration. The words employed in the instrument and relied on as creating a separate estate in the wife are the same in botli cases. Here there is no declaration in the will that the husband and wife should retain the possession of the slaves during coverture, but they were in their possession at the time of the bequest, and so continued, doubtless, with the assent of the testator and trustees. There is, therefore, no point of difference to distinguish this case from that decided by the Supreme Court of Alabama. And it is conceived we may with propriety refer our decision to that of the Supreme Court of that State, whose laws furnish the rule of decision in this case.
It results from this view of the law that James Nimmo had the power of dis *17 posing of his wife’s interest in the property in question. And this view of the ease dispenses with the necessity of inquiry as to the power of disposition which the wife possesses in equity over her separate property.
Note 7. — 'Vardeman v. Lawson, 17 T., 10; Hawkins v. Leo, 22 T., 644.
It is scarcely necessary to say, that tiie principles applied in the interpretation of words employed in instruments conveying property to married women in those courts where marital rights are governed solely by the rules of the common law would not be applicable to instruments of like import here. There, language is interpreted with great nicety to sustain the marital rights of the husband. (2 Story Comm. Eq., sec. 1383.) A claim to separate property by the wife is said to be against common right.. (8 Ala. R., N. S., 351.) Here, the policy of the law in respect to marital rights, and the respect which it pays to the wife’s claim to separate property, are widely different. Those differences, however, do not claim our present attention. The subject is adverted to merely to prevent misapprehension as to the extent of the application of the principles to which the decision of the present case is referred.
James Nimmo, by virtue of his marital rights, having the power of disposition of liis wife’s interest iu the property bequeathed, and having virtually exercised that power, being present, assenting to the distribution, aud voluntarily surrendering the possession of the property for a valuable consideration, in the payment of his debts, could not afterwards, either singly or conjointly with his wife, maintain an action to regain the possession.
It remains to inquire, whether the children of Mrs. Nimmo could dispose of their interest in the property bequeathed them.
This question is free from difficulty. They had a vested interest in the property, present and prospective. Their present interest was for their support during the life-estate of their mother. This they, being of full age, could dispose of at pleasure. Their prospective interest was a vested remainder, an “actual estate,” subject to their disposal. (4 Kent Comm., 202, 204, 205; 2 Bl. Comm., 168, 169, n.; 25 Wend. R., 119.) So, also, “all contingent and executory interests are assignable in equity, and will be enforced if made for a valuable consideration; and it is settled that all contingent estates of inheritance, as well as springing and executory uses aud possibilities, coupled with an interest where the person to take is certain, are transmissible by descent, and devisable and assignable.” (4 Kent Comm., 261; 2 Id., 475, n.) There is, however, this restriction upon the dispositions of heirs dealing with their expectancies, and reversioners and remaindermen dealing with property already vested in them: that it is incumbent on the party dealing with them “ to make good the bargain ” — that is, to show that the dealing is fair, and for an adequate consideration. (Story Comm. Eq., secs. 336, 337.)
In the present case the consideration appears to have been adequate, and the dealing characterized by the utmost fairness and justice.
We conclude that all the parties to the distribution and division of the property made in the State of Alabama were competent to dispose of their respective interests, aud, there having been no fraud or unfairness employed in effecting the distribution made, that it was valid and binding upon them, and consequently that the present action cannot be maintained. The judgment must therefore he affirmed.
It is believed that the same result must have been attained upon other principles, which, however, it is unnecessary now to disepss.
Judgment affirmed.