# THIRD DISTRICT, 1896.

## V. W. HALE v. W. R. HOLLON ET AL.

### Decided May 20, 1897.

**1. Hearsay—Declarations of Grantor.**

The declarations of a grantor, made after conveyance, in disparagement of his deed, are not admissible against his grantee, though offered to prove fraud in the transaction.

**2. Harmless Error.**

Improper admission of testimony is not ground for reversal where, upon other facts, no judgment other than that given could have been rendered had it been excluded.

**3. Conveyance of Expectancy.**

A mere expectancy of inheritance of land belonging to one living may be the subject of conveyance by the heir expectant if the transaction is without oppression or undue advantage of the heir, fair and upon adequate consideration, and with the consent of the ancestor; or, without such consent if the ancestor is mentally incapable of giving it.

**4. Registration.**

A conveyance of the grantor's expectancy of inheritance of lands from the estate of one living, is an instrument authorized to be recorded under Rev. Stats., art. 4639, and its record becomes, upon the death of the former owner and consequent vesting of the estate in the grantee of the heir, notice to creditors of the grantee's title. Accordingly the rights of such grantee will prevail over those of a judgment creditor of the grantor whose abstract of judgment was filed before conveyance made or death of the former owner (when the grantor had no title upon which it could attach a lien) and whose lien by execution levied after the death of the former owner was acquired with record notice of the grantee's rights.

APPEAL from the District Court of McLennan County. Tried below before Hon. L. W. GOODRICH.

*A. C. Prendergast, R. W. Andrews* and *Hale & Hale,* for appellant.

*Clark & Bolinger,* for appellee.

A writ of error was granted by the Supreme Court in this case, upon a question as to the correctness of the ruling holding valid the conveyance of an expectancy without the ancestor's consent, but upon final hearing the judgment of the Court of Civil Appeals was affirmed. Hale v. Hollon, 90 Texas, 427.

COLLARD, ASSOCIATE JUSTICE.—The statement of the nature and result of the suit made by appellant is correct, and is adopted by this court. It is as follows: "This suit was brought by appellant against

appellees, W. R. and D. P. Hollon, to cancel a conveyance made by D. P. to W. R. Hollon."

Plaintiff among other things, alleged that he (V. W. Hale) was the legal and equitable owner of certain real estate, situate in the city of Waco, McLennan County, by virtue of a deed from the sheriff of said county, dated December, 4, 1894; that certain persons owned and held several judgments for a large amount of money against appellee, D. P. Hollon, rendered by the District Court of Lamar County, Texas, in April, 1894; that abstracts of said judgments were filed and indexed and recorded in McLennan County; and that after they were so filed, recorded and indexed, and on the 25th day of June, 1894, D. P. Hollon made some kind of a pretended and fraudulent transfer to appellee, W. R. Hollon, by virtue of which he claimed to be the owner of the land in controversy; that at the time the abstracts were filed, and at the date of the transfer from D. P. to W. R. Hollon, the land in controversy was the property of S. E. Hollon, who was a sister of W. R. and D. P. Hollon, was a non compos mentis, whose heirs were W. R. Hollon, D. P. Hollon, and the children of Hannah Irvine, and that D. P. Hollon was an expectant heir of the said S. E. Hollon of one-third of whatever she might own at her death; that she had no other heirs expectant, and that the ancestor, S. E. Hollon, died subsequently to the filing of said abstracts and to the execution of said so-called transfer to W. R. Hollon by D. P. Hollon; that she died on the 15th day of October, 1894, intestate, and that immediately after her death appellant caused to be issued executions on said judgments against D. P. Hollon, levied on the land in controversy, and sold by the sheriff of McLennan County, and that appellant purchased the same, and received sheriff's deed therefor, and immediately brought suit against appellees to cancel the transfer made by D. P. to W. R. Hollon, made after the abstracts of judgments under which appellant claims were filed and before the death of the ancestor, S. E. Hollon, alleging that it was made to hinder, delay and defraud the creditors of D. P. Hollon, was without consideration, and that the grantee therein knew it and was a party to such fraud.

Appellees answered by general demurrer and general denial, and W. R. Hollon filed a special answer, admitting that S. E. Hollon died October 15, 1894, intestate, but denied that he knew of the insolvency of D. P. Hollon, or that he was largely indebted, or any knowledge of judgments existing against him, or that the transfer was made to hinder, delay or defraud his creditors, or that it was made to cover up what D. P. Hollon might inherit from his sister, S. E. Hollon, denying any combination between the two Hollon brothers in the matter; then sets up that on the 25th of June, 1894, in good faith, for a valuable consideration, without fraud, or notice of D. P. Hollon's insolvent condition, or that there were judgments against him, and without notice of any abstracts of judgments having been filed against him, he bought the entire interest of D. P. Hollon in the estate of S. E. Hollon, of what-

ever kind or nature, which she, the said S. E. Hollon, was then in possession of or might thereafter become possessed of, paying and delivering to the grantor a valuable consideration therefor, to-wit: a negotiable note for ten thousand dollars, payable ten years after date, in consideration of which note D. P. Hollon transferred to him "all his right, title and interest, in and to the interest he, the said D. P. Hollon, might thereafter acquire in the estate of S. E. Hollon as her heir"—deed duly acknowledged and recorded on same day; that the negotiations for the purchase of such expectancy had been pending for several years, and that the ancestor, S. E. Hollon, was fifty-eight years old at the time, and that at the time of the conveyance to him, D. P. Hollon had no present vested interest in any of S. E. Hollon's property, but held only an expectancy as a probable heir in case of her death, and that the price paid was its real value at the time, and that there were no liens of any kind arising by operation of the registration statute or otherwise on said property, and that by the transfer to W. R. Hollon, the superior equitable title and beneficial interest of D. P. Hollon passed to him, and that the interest of D. P. Hollon, at the death of S. E. Hollon, passed directly to W. R. Hollon by virtue of said transfer and not to D. P. Hollon.

He alleged that appellant was not a bona fide purchaser, without notice, for value, for that notice of W. R. Hollon's rights and title was given at the sheriff's sale, and that W. R. Hollon was in possession of the property, and asked for the cancellation of appellant's sheriff's deed, for costs, etc. The court, without a jury, rendered judgment for the defendants, and a decree cancelling appellant's sheriff's deed, for costs, etc."

*Findings of fact.*—Several judgments were obtained against D. P. Hollon for several thousand dollars, one in District Court of Lamar County, Texas, April 3, 1894, in favor of Elizabeth Carpenter, for $1238.41, with 10 per cent interest and all costs; one in the same court on same day for $2476.83, with 10 per cent interest per annum from date and all costs, in favor of Mrs. Hattie S. Hale; another in same court on same day for $2473.80, with 10 per cent interest per annum from date and all costs, in favor of B. V. and A. L. Ownby; and another for $3398.09, on same day, in same court, with 10 per cent interest from date and all costs, in favor of J. J. Miller. Abstracts of these several judgments were duly made out and certified by the clerk of the court sending them, filed and recorded in the judgment records of Mc-Lennan County, and duly and properly indexed by the Clerk of the County Court of McLennan County, the first on April 27, 1894, the second and third June 14, 1894, and the fourth on June 30, 1894.

Regular alias executions were issued by the Clerk of the Lamar County District Court rendering the judgments, October 20, 1894, to sheriff or any constable of McLennan County, were received by the sheriff same day and levied on the lots of land described in plaintiff's petition,

and after legal advertisements for sale, on the first Tuesday in December, 1894, the land was sold to V. W. Hale under the levy of execution on the first judgment for $1392.12, on the second for $1395.51, on the third for $1398.04, and on the fourth for $2167.19. Sheriff's deed was duly executed by W. L. Burke, sheriff of McLennan County, of date December 4, 1894, reciting the executions, levies, advertisements, sale &c, and that V. W. Hale had bought lots 10, 11 and 12 in block 6, Waco, Texas, for $1900 each, and the two and one-fourth acres of land for $650.85, making a total on all the four executions of $6350.85, showing receipt by the sheriff of the purchase price bid,—the deed purporting to convey to V. W. Hale "all the estate, right, title and interest which the said D. P. Hollon had on the 27th day of April, 1894, or at any time afterwards in and to," etc., describing the property in suit as in the petition.

The land in suit, the title to which is in controversy, was the property of S. E. Hollon, who was born, lived and died non compos mentis, and was incurable. She died the 15th day of October, 1894, being at the time 58 years old, five days before the levy of the foregoing execution. She had never been married, died without issue and without mother or father, and her only heirs at law were her two brothers, D. P. and W. R. Hollon, and the four children of a deceased sister, Mrs. Hannah Irvine, the brothers being each heirs to an undivided one-third of the property.

Plaintiff's claim of title to the property rests upon the sheriff's sales under the judgments, executions, etc., against D. P. Hollon's one-third undivided interest as inherited from his sister. D. P. Hollon was the guardian of the person and estate of S. E. Hollon. He lived in Lamar County and his brother, W. R. Hollon, resided in Waco, McLennan County, Texas. The two brothers met in Waco, and there, on the 25th day of June, 1894, D. P. Hollon made to W. R. Hollon the following conveyance:

"The State of Texas, } . 
"County of McLennan. } "Know all men by these presents: That I, D. P. Hollon, of the county of Lamar, State of Texas, for and in consideration of Ten Thousand dollars cash to me in hand paid by W. R. Hollon, of the county of McLennan, State of Texas, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto the said W. R. Hollon all that piece or parcel of land situate, lying and being in the counties of McLennan and Delta, State of Texas * * * and described as follows: My entire interest in the estate of S. E. Hollon, of whatsoever kind and nature she is now in possession of, or may hereafter become possessed of. Together with all the rights, members, hereditaments and appurtenances to the same belonging or in any wise incident or appertaining thereto. To have and to hold all and singular the premises above mentioned unto the said W. R. Hollon, his heirs and assigns forever; and I do hereby bind

myself, my heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said W. R. Hollon, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand this 25th day of June, A. D., 1894.

[Signed]          "D. P. HOLLON."

The conveyance was duly acknowledged by D. P. Hollon on the same day, was filed for record same day, and was duly recorded July 2, 1894, in McLennan County, where the property in controversy is situated. Defendant W. R. Hollon claims under this instrument. It was proved on the trial that the expressed consideration of $10,000 cash was not paid. W. R. Hollon gave his note for the $10,000, due ten years after date, payable to M. D. Hollon, wife of D. P. Hollon, bearing interest from maturity at 10 per cent per annum. The note was the sole consideration for the conveyance. D. P. Hollon was induced to make the transfer to his brother because he was indebted to his wife and desired to protect her. S. E. Hollon was living at the time of the transfer.

Plaintiff V. W. Hale and his son were law partners and were attorneys for the judgment creditors of D. P. Hollon and executions under which the property was sold, had the abstracts filed and the executions issued, and the son bid in the property at the sale for his father and brought the latter the deed, who paid part of the consideration for the deed in money and secured the balance to the satisfaction of the parties at interest. Plaintiff knew D. P. Hollon's financial condition at the time the judgments were taken, had had a good many dealings with him, mostly in lending money to him and buying vendor's lien notes of him. D. P. Hollon was insolvent at the time the judgments were rendered against him and when the abstracts were filed. Plaintiff says D. P. Hollon "had lots of property" at all times, but that it was all mortgaged and has since been sold under the mortgages, and plaintiff had claims against him amounting to $5350, which he testifies was the amount of his bid.

The value of the Franklin Street property in Waco at the time of the transfer of D. P. Hollon to W. R. Hollon is placed as high as $37,500. There was a lease on it for $400 per year ground rent, which had more than five years to run at the time of the sale, expiring in August, A. D. 1900, and there is testimony to the effect that, considering the lease, the value of the property would be about $20,000, but without the lease, $25,000 at the time;—that the value to a purchaser would be the increase in valuation. The other property in south Waco was worth not over $7000. The Delta County property was worth about $1280, if it contained 80 acres, and if 160 acres, $2560.

The inheritance of D. P. Hollon without the transfer to his brother would have been one-third.

There is some testimony tending to show that the sale of D. P. Hollon to W. R. Hollon was made with intent on the part of D. P.

Hollon to defraud his creditors, and the very judgment creditors before mentioned, but the testimony is not conclusive upon this point; it is conflicting. The testimony tends to show that if D. P. Hollon had such intention it was not known to his brother W. R. Hollon at the time of the sale, and that he did not know of facts which would put him upon inquiry of such intent, though the testimony was not conclusive as to this,—some circumstances indicating that he might have known his brother's financial condition,—in debt, insolvent and unable to meet his liabilities. The court below must have found against the averment of fraud in the transfer set up by the plaintiff, and we cannot say that the evidence is not sufficient to justify that finding. So we find that the transfer was not made with intent to defraud creditors of D. P. Hollon. D. P. Hollon resided in Paris, Lamar County, and W. R. resided about three miles east of the city of Waco. The latter knew very little of the former's business,—nothing of the judgments against him or the abstracts filed, as a matter of fact. They had been so living apart for some twelve years or more, and it is not shown that W. R. was familiar with his brother's business. We cannot dissent from the lower court's conclusion on this question, as there is evidence sufficient to support it.

At the date of the execution sales the following notice was given to the public by Clark & Bolinger, attorneys for W. R. Hollon:

"Public notice is hereby given that the property now proposed to be sold by the sheriff as the property of D. P. Hollon, a description of which has just been read by the sheriff, is not now the property of D. P. Hollon and never was, but the same is the property of W. R. Hollon, and was at, and long before any levy was made on same, and that he is in possession of the same as owner and expects to continue to own and hold said property. The amount for which the property sold to W. R. Hollon was a fair consideration, and it was fair as between the parties.

"W. R. Hollon.

"By Clark & Bolinger, his attorneys."

The same notice was given at sale of each tract December 4, 1894, at and before sale by sheriff.

*Opinion.*—On the trial plaintiff Hale being on the witness stand testified that he knew D. P. Hollon and had known him for a long time; that about July 1, 1894, and several times soon thereafter, he had had several conversations with said D. P. Hollon about the payments of the judgments shown against him in this cause. Plaintiff then offered to prove by himself that in those conversations D. P. Hollon had stated to him, "that he had no money or anything else to pay said debts with except what he expected to inherit from his sister S. E. Hollon;" and also that several days after the death of his sister he told plaintiff "that he was going to try to get the money on the property that he had in-

herited from his sister, to pay those debts;" and that in none of these conversations did he tell plaintiff or notify him that he had previously made any transfer or conveyance to his brother, of the property he had inherited from his sister. ·Defendants objected to the testimony because it was hearsay, was inadmissible for the purpose of in any way affecting W. R. Hollon, who is the real defendant in the case, because made subsequent to his purchase from D. P. Hollon, which objections were sustained by the court, and the evidence was excluded by the court, plaintiff excepting to the ruling of the court.

The ruling is here assigned as error, no reason being stated in the assignment, but the proposition made separate from the assignment is that the testimony should have been admitted as tending to establish the fraud alleged, under the wide range allowed in the introduction of evidence in cases of fraud, and would have furnished an opportunity to connect W. R. Hollon with the fraud.

The ruling of the court was correct. The testimony was, under the circumstances, purely hearsay. The declarations of a grantor made after sale in disparagement of his deed are not admissible against his grantee. The vendor cannot thus defeat his vendee's title. Nothing is shown to bring the testimony offered within any rule of exception,—that W. R. Hollon was present when the declarations were made, that D. P. Hollon was in possession of the property claiming it as his own, or was in such control of the property, or was doing any act in reference thereto, as to make his declarations res gestæ. He was not acting for his brother. His declarations were hearsay. Hinson v. Walker, 65 Texas, 106, 107, and authorities cited; Carlton v. Baldwin, 27 Texas, 572; 1. Greenl. Ev., 113, 114. The foregoing rule was applied to declarations of one charged with fraud, the question being whether money that went into the purchase of goods was in good faith a loan, or simulated. The court say: "We see no reason why the declarations of Smith made after the money had been loaned to Hinson and invested in whole or in part in goods should be received to show that the loan was not real and in good faith."

In connection with this, other facts may be referred to which were in evidence. The heirs of Mrs. Hannah Irvine owning one-third of the estate of S. E. Hollon, the deceased, met with W. R. Hollon in Waco about the 1st of November, 1894, to divide the property so that W. R. Hollon could mortgage his interest in it—his interest as heir and as vendee of the interest of D. P. Hollon—for $6,000, which W. R. wished to pay to D. P. on the $10,000 note, so that, as stated by D. P., he could pay and satisfy the judgments against him in Lamar County, D. P. Hollon being present at the meeting and having the note for $10,000. D. P. Hollon made no effort to get money on the estate but W. R. Hollon did, but could not, because of the levy made, and the advertisment of the property for sale of D. P. Hollon's interest in it. D. P. Hollon was expecting to get money on the note from his brother with which to satisfy the judgments, by W. R. mortgaging his

inherited and bought interest in the estate. On November 12, 1894, D. P. Hollon telegraphed Hale & Son at Paris, Texas, from Waco. "I had my arrangements made for the money but you have stopped me. Will you stop the advertisement and carry out your contract with me? Answer. (Signed) D. P. Hollon."

To this Hale & Son replied by telegram, "Will not stop advertisement, but will release property at any time before sale if debts and costs are paid." W. R. Hollon had partially made arrangements to get the $6,000 to pay to D. P. Hollon on the $10,000 note, but was not able to do so on account of the levy.

The foregoing acts of the parties, in evidence, occurred after the sale by D. P. Hollon to W. R. Hollon. At the time of the sale W. R. Hollon did not know of D. P's financial condition. These subsequent acts of the parties do not show fraud in the original sale or that there was a conspiracy between the brothers to defraud the creditors of D. P. Hollon, and will not authorize the admission of the declarations of D. P. Hollon offered by plaintiff for the purpose of impeaching the sale.

2. Attached to the sheriff's deed to plaintiff was a private memorandum made by him as information to parties interested in case he should die, furnishing data upon which a settlement could be properly made with his clients in regard to his purchase of the property. It was read in evidence by defendants over his objections and is as follows:

"State of Texas,  ⎫
"Lamar County.  ⎭ "Know all men by these presents that whereas, on the 4th day of December, 1894, I purchased at sheriff's sale an undivided one-third interest in and to six brick store houses and lots and one-third interest (undivided) in and to a residence and lot in the city of Waco, Texas, which property was then deeded by the sheriff of McLennan County, whose name is W. L. Burke * * * and whereas I used in part payment of the purchase price of said property the following amounts (to-wit): Eleven hundred and ninety-six dollars and fifty-two cents which belonged to Miss Elizabeth Carpenter, of Paris, Texas, which amount was due her on one of the executions by virtue of which said property was sold. I used twelve hundred and four and forty-four cents which belonged to Mrs. Hattie S. Hale, Mrs. T. Mitchell and Mrs. A. L. Ownby, which amount was due them on one of the executions under which the said property was sold, which latter execution was in the name of Mrs. Hattie S. Hale, the respective amounts due each of said parties in said execution is shown on the books of Hale & Hale. I also used twelve hundred and eighty-one dollars and twenty-six cents, which is the amount due Hale & Hale, as assignee of Mrs. A. L. Ryland (Ownby), shown in one of the executions under which property was sold. I also used the amount of nineteen hundred dollars and ninety-four cents, which was the amount due to J. J. Miller of

Paris, Texas, on one of the executions under which said property was sold. Said executions held priority of lien and right on said property in the order named herein. All said executions were issued upon judgments of the District Court of Lamar County, Texas, in favor of the parties herein named, and all against D. P. Hollon, whose interest in said property was sold and conveyed to me, which respective amounts are to draw ten per cent interest per annum from this date. Now, know ye that I hold said property, so conveyed to me by said sheriff, in trust for the parties to whom such judgments belonged, to the extent of the respective amounts due each of them, and whenever the property can be sold, if I can sell it, out of the proceeds thereof I am to pay each of these parties the respective amounts due each, until which time I hold said property in trust for them to the extent of their respective interests therein, as above shown, and I will use my best efforts to sell said property at such prices as may be satisfactory to them, in order to realize the amounts due each. Said V. W. Hale being trustee only to the extent of the respective parties above named, and it being probable that there may be litigation with W. R. Hollon or some one else with reference to the title to said property, he the said V. W. Hale, is authorized to take all steps necessary to perfect the title to the property and incur whatever expense may be necessary for that purpose, each of the cestui que trust bearing a just and ratable portion of such expense.

"Given under my hand at Paris, Texas, this 8th day of December, 1894.      [Signed]      "V. W. Hale."

The foregoing document was in the possession of Hale, the plaintiff and he, while he was on the stand, at request of counsel for defendants, gave it to him. It had been detached from the deed which was in evidence. Being questioned by defendants' attorney about it, plaintiff said that he had written and signed the paper very soon after the execution of the deed, dated four days thereafter, and had attached it to the deed for the purpose of showing, in case of his sudden death or any accident, the status of the property to the plaintiffs in the judgments, his clients; that he had made no agreement with his clients to buy said property for them, but had bought it for himself, subject however to his clients agreeing thereto; that he had never delivered the paper to any one, but kept it in his possession all the time, and had executed it for his own information and for himself. Thereupon defendants offered the paper in evidence on the question of the bona fides of the purchase of plaintiff. Plaintiff objected to its introduction because it was immaterial for any purpose, and because it was the private paper of plaintiff and was not a contract between himself and any one. The court overruled the objections and admitted the paper in evidence. In regard to the same paper and the matters stated and sustained therein, plaintiff testified that the paper was merely a memorandum with which to settle with the various parties named. He had put it there (attached it to the deed) but something might occur in case he might die suddenly or some-

thing of that sort, and he wanted the evidence there. The parties were scattered. As to the facts he testified, "the sole consideration for this land was $6350. I paid part of the amount, I have still, in cash and secured, the balance. I personally assumed the burden to settle it. When I have paid it off, I will be out $6350; that was a memorandum that I made as a matter of caution, so that in case of my death anyone might see how the thing stood, and I pasted it to the deed so that it would not get lost and they would be together. I paid the sheriff all the costs, which I think amounted to two hundred and some odd dollars. I told him I would settle with the parties plaintiff in execution, which I have since done. That memorandum was made four days after the sheriff's deed. Since then I have bought the interests of these people and settled with them. I never delivered the paper to anyone, but kept it in my possession all the time. It does not represent an agreement between myself and parties plaintiff in execution. I bought the property without any agreement with these parties plaintiff in execution. It was probably a month or six weeks after the purchase before I had settled with all the parties. I paid each one of them the full amount due them. I paid them partly in money and partly secured them. I paid about $1000 in cash and the balance in my notes. There was no condition in the notes. It was a straight purchase. I guess my note is good for a good deal more than that."

After plaintiff had proceeded with other testimony, he himself desired to take the stand to explain what he had said in some particulars which he did as follows: "It may be down in the statements that I gave my note to these parties, which I did not do. They have money with me all the time, generally, sending it back and forth between us, paying it out for them, etc., and I corresponded with those that didn't live there in Paris, and I just entered the matter up and paid interest on it. There were no actual notes passed and I wanted to make that explanation and correction." We think it unnecessary to decide as to the admissibility of the memorandum or to settle the contention of the parties on the matter, as in our judgment if its admission was erroneous it was harmless, as the judgment of the lower court was necessarily correct upon the facts outside of and distinct from any effect the memorandum might have. A judgment should not be set aside and reversed on appeal for mere technical error in admitting testimony, when no other judgment should have been rendered upon other facts in the case as established by the judgment.

3. The next contention of appellant is that the court erred in admitting in evidence over his objections, as shown by bill of exceptions, the deed or transfer by D. P. Hollon to W. R. Hollon, of date June 25, 1894, because it was void, and conveyed no present title, none being in the grantor at the time of the conveyance, and it only attempted to convey what interest he then had, which was none; that it was void as being contrary to public policy, and was not admissible to show title; that it was void for want of description of either part of land owned by S. E.

Hollon, and the description attempted to be given is self-contradictory and uncertain and therefore void; and because there is a fatal variance between the instrument and the one pleaded by defendants. In our opinion none of these objections to the instrument are well taken. In connection with the foregoing we will also consider the ninth and tenth assignments of error, which assert that the court erred in rendering judgment for defendants "because plaintiffs' abstracts of judgments were of record and the liens attached to the land prior to the conveyances of D. P. Hollon to W. R. Hollon; because the conveyance was only of the present interest; that D. P. Hollon was insolvent at the date of the transfer; that it was made without sufficient consideration, was made by one brother in failing circumstances and insolvent to another brother, with intent to cover up his property and defraud his creditors, all of which was well known to W. R. Hollon, and he had notice thereof, and it was fraudulent and void; that no estate could by the instrument enure to W. R. Hollon, as D. P. Hollon had no estate in the property at the time of its execution; because the instrument fails to describe the land in controversy, and does not furnish any data by which it can be identified; that the description is conflicting and impossible of ascertainment; that the filing and recording of the abstracts, death of S. E. Hollon, levy of executions, and advertisements thereunder all occurred before appellant had any notice, actual and constructive, of the conveyance to W. R. Hollon, its record being no notice; that the conveyance was a cover for D. P. Hollon, the note being payable to his wife; that no possession was given to the grantee, nor could have been, and the conveyance was made without the knowledge or consent of S. E. Hollon, was contrary to public policy, and was therefore void, of which W. R. Hollon had notice; that the abstracts of judgments against D. P. Hollon were filed, recorded and indexed before the conveyance to W. R. Hollon was executed, and appellant holds a regular, valid sheriff's deed under judgments, execution liens fixed before the conveyance to W. R. Hollon and without notice thereof, and has good title in law and equity and under the registration statute."

It is not now a mooted question that an heir apparent may execute a valid conveyance of his expectancy in the estate of his ancestor or next of kin, if it be without oppression, or undue advantage of the heir, and if it be fair and upon adequate consideration and with the consent of the ancestor. Story expresses the doctrine in these words: "A naked possibility or expectancy of an heir to his ancestor's estate, or even of the anticipated rights of a person as next of kin may be the subject of a contract in equity which will be equivalent to an assignment of the property if and when it shall fall into possession." 2 Spence, 865; 2 Story's Eq., secs. 1040, 1055.

Beach in his work, Modern Equity Jurisprudence (Vol. 1, sec. 327), lays down the rule in this language: "As a general rule contingent interests are assignable in equity the same as vested interests. And the better opinion is that a court of equity will uphold an assignment of a

bare possibility when made in good faith and for value, or to secure a precedent debt; as for example that of an heir at law to the estate of his ancestor; or the interest which a person may take under the will of another then living; or the share to which a person may become entitled under an appointment; or in personal estate as presumptive next of kin of a person then living. In such cases, when the expectancy has fallen into possession, the assignment will be enforced."

In the next section this author proceeds to say: "Equity will uphold assignments of property to be acquired in future, if fairly made and not against public policy, not as a transfer operating in præsenti, for that can only be of a thing in esse, but as a present contract, to take effect and attach as soon as the thing comes into existence."

In Jenkins v. Stetson, 9 Allen (Mass.), an heir had executed a bond to devise an estate which may come to him by descent. It was held that the bond was valid and that it was an immaterial circumstance "that the agreement contains a clause by which the defendant's testator was bound to give to plaintiff, not only the property she had in possession at the time of the execution of the bond, but also that which she might receive as heir or legatee of her mother." And it is added: "An agreement by an heir apparent that he will convey an estate which may come to him by descent is valid if entered into fairly, on adequate consideration, with the knowledge and assent of the ancestor, and if the bargain is not unconscionable or obtained by oppression or by taking unjust advantage of the necessities of the heirs."

In Fritz's Appeal, 160 Pa. St., 156, an assignment of an expectancy was sustained upon the ground that there was a sufficient consideration for it, the court saying: "It has been many times decided and is not at all controverted that such an agreement is valid if founded upon sufficient consideration."

The case of Fitzgerald v. Vestal, 4 Sneed (Tenn.), 257, was a suit to test the validity of the sale of an expectancy by an attaching creditor. The assignment was sustained, the consideration being a good one and the father consenting to it. "The suit at law by Jesse against Amos, which afterwards ripened into a judgment for $399, was pending at the time of the sale, and proof is made tending to prove that the sale was made to defeat that claim and to implicate Dodson in that object and purpose. This last ground could have no effect upon the validity of the sale in any aspect of the case or state of proof. It was not a transfer of any property a right to which a creditor could subject to his debt, as it was only an expectancy depending entirely upon the will of the father." "Such sales" the court say "particularly by young expectant heirs or persons in necessitous circumstances, are looked upon with jealousy and will be closely scrutinized; but when fair and honest will be sustained, especially when known and approved by the parent from whom the estate is to be derived. The contingent and uncertain character of the subject matter of the contract can only affect the price, but not the assignability of the thing. For this reason the advantageous

character of the bargain when the contingent events favor the purchaser, as in this case, is no argument against the fairness of the sale."

In addition to the foregoing authorities we refer to the following which uphold the doctrine stated: Pennock v. Coe, 23 How., U. S., 117; Groot v. Story, 41 Vt., 533; McClure v. Raben, 36 Am. St. Rep., 558, and McClure v. Raben, 125 Ind., 139; Am. & Eng. Ency. Law, 830, and notes; Ryan v. Railway, 64 Texas, 242; Hannon v. Christopher, 34 N. J. Eq., 459; Field v. Mayor of New York, 6 N. Y., 179; Kinyon v. Kinyon, 72 Hun., 452; Bispham's Eq., 243; 1 Pom. Eq., sec. 168; Nimmo v. Davis, 7 Texas, 26; March v. Huyter, 50 Texas, 243.

In the case of Nimmo v. Davis, supra, our Supreme Court quote approvingly the following language of Kent (4 Kent's Comm., 261): "All contingent estates of inheritance, as well as springing and executory uses and possibilities coupled with an interest, where the person to take is certain, are transmissible by descent and devisable and assignable." The court say that "there is this restriction upon the dispositions of heirs dealing with their expectancies * * * to show that the dealing is fair and for an adequate consideration." 7 Texas, 34.

The expectancy of D. P. Hollon conveyed to his brother was "all that piece or parcel of land situate, lying and being in the counties of McLennan, Delta, State of Texas, * * * and described as follows: My entire interest in the estate of S. E. Hollon, of whatsoever kind and nature she is now in possession of or may hereafter become possessed of." The deed contained a covenant of warranty. The conveyance was clearly of all his interest in his sister's estate of which she was then seized and might thereafter become seized.

From the principles as shown by the authorities before quoted and cited, there can be no doubt but that this conveyance, being upon an adequate consideration, fairly made, and without any oppression or undue advantage of D. P. Hollon, was a valid conveyance of the property he inherited from his sister at her death, unless the want of her consent to the sale should invalidate it. Our opinion is that her consent, under the circumstances, was not necessary to constitute the conveyance a valid sale. Between the parties it was a binding conveyance and took effect as a contract at the time it was made, though it would not attach to the property until title was cast by descent of the sister. She was in such mental condition, and had been from birth, that her consent could not be had, nor could she have any will or desire concerning the property of her brother. The reason underlying the rule requiring the ancestor's consent to such a conveyance, and making it contrary to public policy if made without his consent, is said to be that if the conveyance be upheld without his consent it would be a fraud upon him, as, if he were in ignorance of it, he would allow his estates to pass by the laws of descent and then go to a stranger, while if he knew the facts he would, by will or otherwise, prevent it; or he would allow a will to stand in favor of the conveying legatee, while otherwise he would revoke the legacy. And it is said too that the heir ought to

be under the advice of the ancestor through the influence of his power of disposing of his property, and this would be destroyed if the heir could without his consent alienate his expectancy; and other reasons might be assigned for the rule, but all of them rest upon the assumption that the ancestor is sane, and has some preference or power in the matter over the property, which will be interfered with by the conveyance. When this reason and all the reasons of the rule fail the rule itself ought to fail. The rule is in restraint of the power of a citizen to alienate a property right,—the alienation of an expectancy,—a conceded power unless there should be some good reason why it should not be exercised. If this efficient reason cannot exist it is removed; it cannot be a cause of inhibition of the power. At most it is a qualification of the power to sell, and if there be no such reason there is no longer a qualification of it.

It was held differently in Indiana in the case of McClure v. Raben, 133 Ind., 507, upon the ground that there was no precedent for it, and the court was unwilling to "extend the rules beyond that required by the authorities." 36 Am. St. Rep., 562. Our view of the question is that the reason of the restriction having utterly failed, there is nothing to sustain it, and it ought not to be upheld or appealed. to as a ground of invalidating the assignment. There are precedents enough for the principle that when the reason of a rule of law fails the rule itself must fail. And upon analysis of the principle in the abstract and as applied to this or other cases it will become more forcible and satisfactory. We are entirely satisfied with the conclusion in this case and feel constrained to hold that the assent of S. E. Hollon to the conveyance of D. P. Hollon .to W. R. Hollon was not, under the circumstances, neces sary to its validity.

4. Appellant contends that as the abstracts of judgment were entered of record and indexed prior to the sale by D. P. Hollon, the judgments were a lien on the land under the law of registration, superior to the rights of the vendee W. R. Hollon, and that the plaintiff's purchase under executions upon these judgments vested superior title in him to that of the purchaser at the private sale. The registration of the abstracts of judgments created no lien upon the land at the time of their registration, and could not have that effect at least until the death of S. E. Hollon, which cast the title by descent upon D. P. Hollon. There was no property of Hollon that the lien could take effect upon until his sister's death; it could not take effect upon his expectancy—a mere prospect of inheritance. But prior to her death D. P. Hollon had conveyed his expectancy to W. R. Hollon, by deed with clause of warranty, which deed was duly acknowledged and recorded at once. The abstracts were filed for record and indexed April 27, and June 14, 1894. The deed of D. P. to W. R. Hollon was made on the 25th day of June, 1894, was acknowledged and filed for record same day, and was recorded July 2, 1894. S. E. Hollon died the 15th day of October, 1894, executions on the judgments were levied October 22, 1894, and sale made thereunder

on the first Tuesday in December, 1894. At the sale under the executions notice was given of the claim of W. R. Hollon.

Now if it be admitted that the record of the abstracts created a lien upon the land at and upon the death of S. E. Hollon, was the previous registration of the deed of D. P. to W. R. Hollon notice to the judgment creditors of such conveyance, and to any purchaser under the judgments? Was there notice, at the time of S. E. Hollon's death, of the sale? The lien by registration of the abstracts or by the levy would not be good if at the time it took effect the lien holders had notice of the conveyance. Appellant of course contends that the registration of the conveyance made before descent was cast upon D. P. Hollon was not legal or constructive notice, and there being no proof of actual notice prior to the levy which resulted in the execution sale under which he claims, he invokes protection under the doctrine announced in Ayers v. Dupree, 27 Texas, 594; Borden v. McRae, 46 Texas, 396; Linn v. LeCompte, 47 Texas, 442.

Appellant contends that as D. P. Hollon did not own any interest in the property belonging to his sister at the time he conveyed his expectancy and when the conveyance was recorded, the registration thereof would constitute no notice to any one dealing with D. P. Hollon after he acquired title to the property. And in support of this contention appellant cites Wade on Notice, secs. 214-216. Some of the authorities cited by Mr. Wade support his text and some do not.

The registration of the instrument under consideration was authorized by statute (Sayles' Civ. Stats., art. 4331); and when duly recorded that fact was, we think, notice to all the world of the contents and legal effect of the paper. It may be conceded that the conveyance in question vested no title in the grantee at the time it was executed, and that it never at any time conveyed other than an equitable title, still, it secured to him a valuable property right. The object of registration is to give notice of property rights, and when an instrument secures a right and its registration is permitted by law, then, when it is registered, it gives notice of the right it secures. As bearing on this question and to some extent supporting our views, we cite White v. Patten, 24 Pick., 324; Digman v. McCollum, 47 Mo., 373; Tefft v. Munson, 57 N. Y., 97; Pike v. Galvin, 29 Me., 183; Humphries v. Guillow, 13 N. H., 389; Jarvis v. Aikens, 25 Vt., 635.

Appellant's brief presents some other questions relating to the admissibility of testimony, but they are not of such importance as to require discussion in this opinion. It is sufficient to say that we have considered them and do not think reversible error is shown.

After careful and repeated consideration, our conclusion on the entire case is that the court rendered the proper judgment, and therefore it will be affirmed.

*Affirmed.*

Appellant moved for a rehearing and upon overruling his motion the following opinion was delivered:

COLLARD, ASSOCIATE JUSTICE.—*Opinion.*—We are of opinion that the motion for rehearing should be overruled.

On the question of constructive notice by registration of the Hollon deed, which presents the most difficult question, to us, in the case, we wish in support of our former conclusion to add the following: The statute (Rev. Stats., art. 4639) authorizes the record of "all deeds, mortgages, conveyances, deeds of trust, bonds for title, covenants, defeasances or other instruments of writing concerning any lands or tenements or goods and chattels, or movable property of any description."

The deed in question is an "instrument in writing concerning lands" and the statute authorized its registration, and when recorded it was notice to creditors of and subsequent purchasers from the vendor. It vested in the vendor a present equitable right to such title as the vendor might subsequently acquire by inheritance from his sister. The conveyance contained covenants of warranty by which his subsequently acquired title inured to the vendee. The covenant of title was binding upon the grantor as to the title subsequently cast upon him, and also bound his privies in estate, in blood and in law. He and his privies would be estopped from denying his right and power to sell at the date of the deed, and from denying the investiture of title in the vendee when it became perfect in the vendor. Digman v. McCollum, 47 Mo., 373; Tefft v. Munson, 57 N. Y., 97; Work v. Welland, 13 N. H., 389; 5 N. H., 533; Somer v. Skinner, 3 Pick., 52; 3 Barb. Ch., 528; Pike v. Galvin, 29 Me., 183; Lessee of Buckingham v. Hanna, 2 O. St., 551. The instant the title was cast upon the vendor Hollon it vested in the vendee by virtue of the warranty. The conveyance was binding upon the vendor and his privies, subsequent purchasers and creditors with notice, which would be effected by the registration of the deed. James v. Aikens, 25 Vt., 635; 3 Pick., 51; Doyle v. Peerless Petroleum Co., 44 Bar. N. Y., 239; 1 Johns. Cases, 81.

In Boswell v. Buckingham's Extrs., 3 Leigh (Va.), which holds that where a vendor with equitable estate only in the lands conveying the same without warranty in trust to secure debts, the deed being recorded, afterwards acquiring the legal title and selling to another by warranty deed, the last purchaser should be protected, and that the record of the deed of trust was not notice to the last purchaser under the recording acts. Evidently this decision must rest upon the ground that there was no warranty in the deed of trust passing the legal title, when acquired, to the trustee. A covenant of warranty in a conveyance by one who has an expectant estate in lands binds the vendor at the time of the covenant, and he cannot hold the land by an after-acquired title—the fulfillment of the expectancy—against the warranty—nor can his privies in estate, in blood or in law. If then the conveyance is binding at the time it is executed it is a written contract concerning lands, subject to registration and its consequences. Heitzel v. Barber, 69 N. Y., 1; White v. Patten, 24 Pick., 324.

We do not think that the duty of search for incumbrance or deed

commences at the time of inheritance of title in the vendor, as was held in Calâæ v. Chapman, 52 Pa., when the prior deed was with warranty and binding upon the vendor and his privies. It may be troublesome to search the records, but that would not excuse a want of search when the statute authorized the recording of the conveyance. The statute authorizing its registration, the consequences of registration must follow in favor of the vendee who is vigilant and complies with the law.

The motion for a rehearing is overruled.

Delivered June 17, 1896.

A writ of error was granted by the Supreme Court, but on final hearing the judgment was affirmed in an opinion reported in 90 Texas, 427.