## In the Matter of the Estate of JOHN H. CORNELL, Deceased.

Surrogate's Court, Queens County, March 13, 1939.

*Lester Y. Clerke*, for Edward R. Carman, as executor, etc.

*Charles J. W. Meisel*, for the President and Directors of the Manhattan Company, objectant.

*William B. Dessner*, for the Claude Neon Lights, Inc.

*Thomas P. de Graffenried,* for the objectant.

*Louis Costagliola,* for Vera Lillian Cornell, objectant.

*Louis Jobrack,* for the ancillary receivers of the Liberdar Corporation.

*Edward T. Johnberg, Jr.,* for John Broski, objectant.

*I. Robert Bassin,* for E. Edward Day.

*Abraham Kaplan,* for Robert E. Welch, receiver.

*Samuel Polk,* for Harry Bartow.

HETHERINGTON, S. The decedent died on April 26, 1934, leaving a last will and testament executed on November 28, 1933. Letters testamentary were issued to the named executor on May 21, 1934. His estate consisted of personalty of the value of $63,323.80 and a parcel of real property appraised at $9,000. The real estate was sold by the executor pursuant to a power of sale expressly granted him by the will. The net proceeds of the sale amounted to $6,455.16. Under the terms of the will, testator directed his executor to divide his residuary estate into fifteen equal parts, one of which he gave to his nephew, Charles Wooley Cornell. In view of assignments made by and judgments recovered against the legatee, it has become necessary, in this accounting proceeding instituted by the executor, to determine the priorities and rights of the several claimants to his legacy.

It appears that the legatee made two assignments of his interest in decedent's estate. One of these was made to his wife, as trustee for her daughter. This instrument, absolute on its face, recites a consideration of $4,850, is dated November 1, 1928, and acknowledged on May 14, 1934. Although filed with the executor on May 15, 1934, it was not recorded in the office of the surrogate until November 21, 1938, the day of the hearing. The instrument, when initially presented to the executor, was not acknowledged. At his suggestion, the same was formally acknowledged by the legatee. However, the assignee stipulated on the record that it was made, executed and delivered on its date, November 1, 1928. It was thus made and delivered several years *before* the execution of the will and the death of the testator. On June 5, 1934, the legatee executed an assignment to a bank to secure the payment of a judgment docketed by it against him on February 9, 1932, upon which there remained and still remains unpaid the sum of $1,037.62, with interest from February 8, 1932, the date of recovery. This assignment was recorded in the office of the surrogate on June 6, 1934, and in the office of the register on July 11, 1934. On February 3, 1932, Thomas P. de Graffenried recovered and docketed a judg-

ment against the legatee for the sum of $2,859.30. Another judgment was taken against him by Claude Neon Lights, Inc., for $494.68 on December 31, 1934. On June 22, 1934, an order was granted by the Supreme Court and served upon the legatee in proceedings supplementary to execution instituted by the judgment creditor, de Graffenried. On June 27, 1934, the return date of the order, the legatee was examined, and, then and there, an order was made appointing the objector James Andrew, receiver. This order was filed in the office of the county clerk of Queens county on June 30, 1934, and a certified copy filed on the same day in the office of the clerk of Nassau county. In January, 1935, the judgment creditor, Claude Neon Lights, Inc., procured and served a third party order upon the executor, but it does not appear that the receivership has been extended for its benefit. On May 13, 1935, the legatee was adjudicated a voluntary bankrupt. His trustee in bankruptcy has appeared without filing any objections to the account.

While the wife of the legatee claimed in her objections that her rights under the assignment were superior to those of the other claimants, she now concedes in her brief that the bank's assignment is entitled to priority. The proof establishes that the existence of her assignment was neither disclosed to the bank nor that it had any notice of it. In the absence of proof that the bank did not acquire its interest in good faith and for a valuable consideration, the prior recording of its assignment, by express mandate of section 32 of the Personal Property Law and section 274 of the Real Property Law, gives it priority over the assignment to the wife. The claim of the bank is superior to those of the remaining claimants, except as to the judgment creditor de Graffenried's interest in the legatee's share in the proceeds of sale of the real estate. Upon the death of the testator, his judgment, which was docketed prior to that of the bank, became a lien upon the judgment debtor's interest in the real estate of the decedent. (Civ. Prac. Act, §§ 509, 510.) Even though the realty was converted into personalty upon the exercise by the executor of the power of sale, the lien of the judgment attached to the legatee's share of the proceeds of sale. (*Sayles* v. *Best*, 140 N. Y. 368.) The bank's assignment, in so far as it affected the legatee's interest in the realty, being subsequent in point of time to the judgment, is, consequently, subordinate to it. Inasmuch as the legacy, excluding the share of the legatee in the sales proceeds, is considerably in excess of the sum required to discharge the claim of the bank, the priority thus awarded neither produces loss to the bank, nor gain to the judgment creditor, whose rights, for reasons now to be detailed, are

deferred to those acquired by the legatee's wife under the instrument aforementioned.

By its terms, the legatee, in consideration of $4,850 paid by Vera Lillian Cornell, sells, assigns, transfers and conveys to her all his right, title and interest, both present and prospective, that he now has, or may hereafter have, in and to any gift, devise, legacy, annuity or trust fund that may be provided for, or contained in any will, or any codicil thereto of John H. Cornell, and that may be admitted to probate after his death, together with all of the right, title and interest that he may hereafter have in and to the estate of which the said John H. Cornell may die seized, or possessed of, as an intestate, in trust for the support, maintenance and education of Vera Ann Ferrer during her minority, and to pay the balance remaining in her hands, if any, to the said Vera Ann Ferrer, either upon her marriage or upon attaining her majority, at the sole discretion of the trustee. The assignor irrevocably appointed the assignee his attorney to demand, sue for, recover and receive any and all moneys or other property, now or hereafter due, owing and payable upon, or under the assignment with authority to perform any act necessary or expedient for that purpose, and covenanted that he would, upon request, execute and deliver any further instruments necessary to perfect the vesting and confirming in the assignee all his right, title and interest in the property, claims or demands thereby assigned.

At common law the mere expectancy or chance of succession of an heir apparent was not assignable by deed; but it is held in this State that, although no immediate estate will vest by the conveyance of such expectancy, and while it does not transfer the legal title thereto, an assignment thereof may be enforced in equity as a contract, after the ancestor's decease, if made *bona fide* and for a valuable consideration. (*Stover* v. *Eycleshimer*, 3 Keyes, 620, affg. 46 Barb. 84; *Baker* v. *Bagg*, 61 Misc. 186; *Nugent* v. *Smith*, 202 App. Div. 279; affd., 234 N. Y. 611; *Matter of Strange*, 164 Misc. 929; *Field* v. *Mayor*, 6 N. Y. 179; *McCaffrey* v. *Woodin*, 65 id. 459; *Matter of Black*, 138 App. Div. 562.) In *Field* v. *Mayor* (*supra*) Bell made an assignment to Garread of bills which might thereafter become due to him from the city of New York for work done or materials furnished, either before or after the date of the assignment. At the time of the assignment Bell had no contract with the city. The court, in discussing the nature of the assignment, said: " There was indeed no present, actual, potential existence of the thing to which the assignment or grant related, and therefore it could not and did not operate *eo instanti* to pass the claim which was expected thereafter to accrue to Bell against the corporation; but

it did nevertheless create an equity, which would arise, and would continue so to operate until the object of the agreement was accomplished. * * * Whatever doubts may have existed heretofore on this subject, the better opinion, I think, now is, that courts of equity will support assignments, not only of choses in action, but of contingent interests and expectations, and of things which have no present actual existence, but rest in possibility only, provided the agreements are fairly entered into, and it would not be against public policy to uphold them." (*Field* v. *Mayor*, *supra*.) " At law, property not existing but to be acquired at a future time, is not assignable; in equity, it is transferable. At law, though a power is given in a deed of assignment to take possession of after-acquired property, no interest is transferred, even as between the parties themselves, unless possession is actually taken. In equity it is not disputed that the moment the property comes into possession the deed operates upon it." (*McCaffrey* v. *Woodin*, *supra*, p. 466; *Wisner* v. *Ocumpaugh*, 71 N. Y. 113; *Coats* v. *Donnell*, 94 id. 168.) This equitable principle has been applied to freight to be earned in the future as well as other demands and to property potentially but not actually in existence at the time of the assignment. (*Kimball* v. *Farmers & Mechanics' Nat. Bank*, 138 N. Y. 500, 506.) There is no claim made by any of the parties that the assignment was not made in good faith and for a valuable consideration. It is attacked solely upon the ground of inherent invalidity. In the light of the foregoing authorities, the assignee acquired an interest in the estate by virtue of the said instrument which in equity should be protected, and which constituted a right paramount to the claim asserted by the receiver, Andrews, under the judgment obtained by de Graffenried, as well as those asserted by the other judgment creditor and the trustee in bankruptcy. (*Slover* v. *Eycleshimer*, *supra*.) In that case the assignment of the expectancy was given as security for a debt and *before* the death of the ancestor. Several months later a creditor secured an attachment against the property of the assignor. Shortly thereafter the assignee transferred her interest to the defendant Sherman. Subsequent to this assignment, the creditor recovered a judgment against the assignor. The referee determined that the assignee was entitled to the fund. Upon appeal the judgment awarding him the fund was sustained. The fact that the judgment here considered was recovered after the assignment and before the death of the testator, produces no different result. In other jurisdictions the transfer of an expectancy made in good faith and for value is valid against a judgment creditor who obtained judgment against the heir before the death of the ancestor and before the transfer of the

expectancy. (*Richey* v. *Rowland,* 130 Iowa, 523; 107 N. W. 423; *Bacon* v. *Bonham,* 33 N. J. Eq. 614; *Matter of Fritz,* 160 Penn. St. 156; 28 A. 642; *Hale* v. *Hollon,* 90 Tex. 427; 39 S. W. 287, affg. 14 Tex. Civ. App. 96; 35 S. W. 843; 36 id. 288.) A transfer of an expectancy by a legatee is, in the absence of fraud, good as against the assignee in insolvency of the legatee (*Peterborough Savings Bank* v. *Hartshorn,* 67 N. H. 156; 33 A. 729), whether the assignment is absolute or as security for a debt. (*Bridge* v. *Kedon,* 163 Cal. 493; 126 P. 149.) Being good as against the legatee, it is here, in the absence of fraud, equally good against the receiver and the trustee in bankruptcy who take only such rights and interests as legatee had, and could himself claim and assert, at the time the receivership and bankruptcy respectively became effective. Both are affected with all the equities that would affect the legatee himself if he were asserting those interests. The equitable jurisdiction of the surrogate to determine and enforce the claims here made is expressly conferred by section 40 of the Surrogate's Court Act when read in conjunction with section 267 and section 314, subdivision 10, of said act. In accordance with these views the executor is directed to first pay out of the legacy given Charles Wooley Cornell, without resorting, however, to his share of the proceeds of the sale of the realty, the claim of the bank amounting to $1,037.62 and the interest thereon from February 8, 1932, and then to pay the balance to Vera Lillian Cornell, in trust for Vera Ann Ferrer. Until the surrogate is apprised of the disposition of the application to be made to consolidate the receiverships and extend the same to cover the scheduled judgments against the legatee, no direction can be made with respect to the legacy payable to George Washington Cornell. Proceed accordingly.