CARUTHERS v. LEONARD. (No. 396–3734.)

(Commission of Appeals of Texas, Section B. Oct. 10, 1923.)

1. **Mines and minerals** &#9110;48, 55(1)—Oil and gas part of realty and may be conveyed like any other interest.

Oil and gas in place are a part of the realty, and are therefore susceptible of ownership, and may be conveyed as any other interest in realty.

2. **Mines and minerals** &#9110;73 — Oil and gas lease conveys interest in land.

A lease conveying oil and gas in place, with the right to enter and appropriate, creates and conveys to the lessee an interest in the land.

3. **Mines and minerals** &#9110;78(1)—Lessee must pursue purpose of exploiting minerals from land.

Lessee under a mineral lease, "for the purpose of prospecting for" minerals "and the production of same therefrom," after the discovery of any of the minerals named in paying quantities, must pursue the purpose of the parties in making the lease to exploit or to produce minerals from the land, or his title and estate in the minerals terminate.

4. **Mines and minerals** &#9110;73—Estate of lessee in oil lease a determinable fee or fee simple determinable.

A lease conveying oil and gas in place, with the right to enter and appropriate, held to create a determinable fee or fee simple determinable in the oil and gas in place, and not an estate upon condition subsequent, because the estate determines ipso facto upon the happening of any one of a number of events; the only estate remaining in the lessor being a mere possibility of reverter.

**5. Mines and minerals ☞74—Possibility of reverter under oil and gas lease assignable.**

The possibility of reverter after a determinable fee created by an oil and gas lease is assignable.

**6. Mines and minerals ☞74—Conveyance of minerals subject to existing mining lease held to convey only half interest in possibility of reverter, and no right to rents.**

A conveyance of a one-half undivided interest in minerals, in terms subject to existing mining lease, *held* to convey only a one-half undivided interest in possibility of reverter under a prior lease to another, not including rentals payable under such former lease.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by M. B. Leonard against O. A. Caruthers. From a judgment of the Court of Civil Appeals (236 S. W. 189), reversing a judgment for him, defendant brings error. Affirmed in part, and reversed and rendered in part.

Anderson & Upton, and Hill & Hill, all of San Angelo, for plaintiff in error.

Wardlaw & Elliott, of Sonora, for defendant in error.

HAMILTON, J. M. B. Leonard brought this suit against O. A. Caruthers, partly in the form of trespass, but also to recover from Caruthers one-half of $1,152.90, which was one-half of 30 cents an acre on 3,843 acres of land, all situated in Menard county, and being a part of the land leased by Evans to Weir, as appears below; all of said money having been paid to Caruthers by the assignee of Weir.

Caruthers answered by general demurrer, special exceptions, general denial, and, as a cross-action, alleged that the written conveyances, wherein C. H. Evans and wife, Mary E. Evans, conveyed to plaintiff an undivided one-half interest in and to all the natural gas, oil, petroleum, coal, and other mineral substances in, on, and under the land as shown by the instruments, the form of which, excepting the description of the land, is set out below in full, were null and void from their inception, and that the record of those instruments in Menard county create and cast a cloud on his title to the lands. He prayed for judgment canceling, annulling, and holding for nought all of those instruments, and for removal of cloud cast upon his title to the lands by the record of those instruments.

On June 5, 1918, C. H. Evans and his wife, for and in consideration of $1,662.90 to them paid by James A. Weir, executed and delivered to him a lease on 5,543 acres of land, more or less, situated in Menard, Concho, and Tom Green counties—

"for the purpose of prospecting for oil, gas, sulphur, and other minerals and the production of same therefrom, together with the exclusive right of ingress and egress at any time to prospect, drill, mine, and otherwise operate hereunder, and the right to erect, maintain, and remove all necessary or proper structures and appliances, including the right to pull the piping from the wells, and to install, maintain, and remove all tanks and other means of storage and all pipes and other means of transportation; and *subject to the royalties hereinafter mentioned, there is hereby granted and conveyed to said lessee all of the oil, gas, sulphur, and other minerals in and under said land.*"  (Italics ours.)

The lease provided that, if operations for drilling an oil or gas well on the land were not begun before June 5, 1919, the lease should terminate as to both parties, unless the lessee, on or before that date, should pay or tender to the lessor $1,662.90; that the payment or tender of that amount should confer on the lessee the privilege of deferring the time limit for 12 months from that date; that, upon like payments of that amount, thereafter, the time limit might be deferred further for additional periods of 12 months successively, provided that the lease could not be kept in force by such payments, in the absence of drilling operations, for a longer period than five years from the date last above set forth; that after operations for drilling an oil or gas well shall have been begun on the leased land, it shall not be necessary for the lessee to make any further payments in lieu of drilling operations in order to keep the lease in force; that during the period of five years, drilling might be suspended from time to time without terminating the lease, provided the lessee shall have paid or tendered the amount thereinbefore mentioned for the then current year; and that, "if the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to the assigns and successive assigns, but no change in the ownership of the land or the rentals or royalties, by purchase or otherwise, shall be binding on the lessee until it shall have been furnished with notice and proper evidence of such change."

The instrument was signed, duly acknowledged, and was recorded in Menard county.

On February 3, 1919, Evans and his wife executed and delivered to M. B. Leonard seven written transfers, including the land involved in this suit, all of which were filed for record in Menard county on February 27, 1919, and duly recorded in the deed records of that county. The forms of these instruments, except the descriptions of the land, were identical and, with that exception, each was as follows:

"The State of Texas County of Sutton—ss.:

"Know all men by these presents: That C. H. Evans and wife, Mary E. Evans, of the county of Sutton, state of Texas, in consideration of $175 to us cash in hand paid by M. B.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Leonard, the receipt of which is hereby acknowledged, have granted, sold and conveyed, and by these presents do bargain, grant, sell, and convey, unto the said M. B. Leonard an equal one-half undivided interest in and to all the natural gas, oil, petroleum, coal, and other minerals and mineral substances in, on, and under the following described lot, tract, or parcel of land lying and being situated in Menard county, Tex., and being all of the north and east seven-eighths of section No. 5, certificate No. 1/304, original grantee, B. S. & F., containing 560 acres of land, more or less, together with the right to enter thereon, open mines, drill wells, lay pipes, and erect. all structures and appliances necessary or convenient in searching for, procuring, caring for, storing, and removing any natural gas, oil, petroleum, or other minerals or. mineral substances of whatever nature and kind whatsoever that may be found thereon, or thereunder, and to erect telephone and telegraph lines for use in the business thereon together with the right to remove any and all fixtures placed thereon.

"It is expressly understood and agreed that the surface of the above-described land is conveyed only for all purposes and uses above set forth. And this conveyance is subject to the terms and provisions of a lease (if valid) executed by C. H. Evans and wife, Mary E. Evans, to James A. Weir, on the 5th day of June, 1918, and recorded in book 32, page 42, of the Records of Menard county, Texas;

"To have and to hold the same unto the said M. B. Leonard his heirs, administrators, and assigns forever.

"We do hereby bind ourselves, heirs, executors, and administrators to warrant and forever defend all and singular said gas, oil, petroleum, coal, and mineral rights herein conveyed unto the said M. B. Leonard, his heirs and assigns against the lawful claim of every person claiming or to claim the same or any part thereof.

"Witness our hands, this 3d day of February, A. D. 1919.                    C. H. Evans.
                                "Mary E. Evans."

[Statutory acknowledgment.]

On January 3, 1919, James A. Weir executed a transfer or assignment, by the terms of which, "for and in consideration of the sum of $100 and other valuable considerations paid," he sold, assigned and set over unto W. H. Reid, his heirs, administrators, and assigns, all right, title, and interest of Weir in and to the oil, gas, and mineral lease and contract executed and delivered to Weir by C. H. Evans and wife on June 5, 1918, above described. This assignment or transfer was duly acknowledged and was filed for record May 31, 1919, and recorded in the deed records of Menard county.

The form of all the instruments referred to above are set out in full in the opinion of the Court of Civil Appeals in this case. 236 S. W. 189.

The trial court filed findings of fact, which are set out in full in the opinion of the Court of Civil Appeals, supra. The trial court's conclusions of law follow:

"(1) I find that the conveyance by said C. H. Evans and wife to plaintiff, M. B. Leonard, of their reversionary interest in the natural gas, oil, etc., in and under the lands in said transfer described, was and is null and void and inoperative, and vested in the plaintiff no interest or title to said natural gas, oil, etc.

"(2) I find that the plaintiff by his said transfer and conveyance from C. H. Evans and wife did not acquire any right, title, or interest in the moneys paid by the assignee of the Weir lease for the privilege of extending the time limit for beginning operations under said lease.

"(3) I find that the $1,662.90 paid by the assignee of the Weir lease to the First National Bank of Sonora and by it to defendant, O. A. Caruthers, belongs to the said Caruthers, and that the same was properly paid to him.

"Judgment is therefore entered for the defendant in accordance with his prayer."

The Court of Civil Appeals refused to cancel the conveyances to Leonard and held that those conveyances entitled him to one-half of 30 cents per acre on 3,843 acres—$576.45—and reversed the judgment of the district court, and rendered judgment in favor of Leonard for $576.45. 236 S. W. 189.

[1] It is held outright, by the Supreme Court of Texas, that oil and gas in place are a part of the realty, and are therefore susceptible of ownership, and may be conveyed as any other interest in realty. Texas Company v. Daugherty, 107 Tex. 226, 176 S. W. 717; Stephens County et al. v. Mid-Kansas Oil & Gas Co. (Tex. Sup.) 254 S. W. 290; Texas Company et al. v. Nelson Davis et al. (Tex. Sup.) 254 S. W. 304; Munsey et al. v. Marnet Oil & Gas Co. (Tex. Sup.) 254 S. W. 311; Thomason et al. v. Ham (Tex. Sup.) 254 S. W. 316—none of which have been officially reported.

[2] A lease conveying oil and gas in place with the right to enter and appropriate creates and conveys to the lessee an interest in the land. Deaton v. Rush (Tex. Com. App.) 252 S. W. 1025, adopted by our Court July 28th.

[3, 4] The interest conveyed by the lease to Weir and his assigns was such as would terminate unless operations for the drilling of an oil or gas well should begin on the land on or before the 5th day of June, 1919, in the absence of a payment by the lessee to the lessor or his assigns, on or before that date, of $1,662.90. Such payment would operate to confer on the lessee the privilege of deferring operations for 12 months. Thereafter, in like manner and upon like payments or tenders of said amounts, the time limit might be further deferred for additional periods of 12 months successively, provided that the lease might not be kept in force, by such payments, in the absence of drilling operations, for a period longer than five years from June 5, 1919. That the lease was terminable at the end of each twelve months after June 5, 1919, upon and by the lessee's failure to pay $1,662.90, or in the alternative to begin drilling operations, is apparent. At the end of five years the lease was terminable, unless

drilling operations had begun, by the failure to drill alone. Upon the discovery of oil, gas, sulphur, or other minerals in paying quantities in or under the land the lease was to remain in full force and effect from such discovery and as much longer as oil, gas, sulphur, or other minerals should be produced therefrom in paying quantities. Under this last provision, the lessee and his assigns, upon the discovery of minerals in paying quantities, would be invested with title to the oil and gas and other minerals and all the rights provided in the lease, for 10 years from the time of the discovery of the oil and gas or other minerals, and as much longer as such minerals might be produced from the land in paying quantities. But that title vested only for the purpose set out in the lease through which the title was derived. The lease specifies that the land was leased "for the purpose of prospecting for oil, gas, sulphur, and other minerals and the production of same therefrom." Should the assigns of Weir, after the discovery of any of the minerals named in the lease, in paying quantities, cease to pursue the purpose of the parties in making the lease to exploit or to produce minerals from the land, their title and estate would terminate. The Texas Company et al. v. Nelson Davis et al., not yet (officially) published. Should the lessee continue his efforts after such discovery, his estate might continue forever, because the land might produce minerals forever. Therefore, there are various contingencies in the estate created by the lease, any one of which, if it should happen, would determine that estate, but if none of them should happen, it would continue forever. The estate, therefore, which Weir, or his assigns, hold by virtue of the lease, is a determinable fee, or fee simple determinable. Texas Co. et al. v. Nelson Davis et al., supra. It is not an estate upon condition subsequent, because the estate determines ipso facto upon the happening of any of the events—any one of the failures by the lessee or his assigns to act—by which its limitation is measured, and its termination does not depend upon the taking of any action by any one to determine it.

[5] Such being the nature of the estate created by the Weir lease, until the happening of an event by which that estate is determinable, all the estate in the oil, gas, and other minerals was out of Evans after the execution of the Weir lease. All that remained to him was a mere possibility of reverter. It has often been said that a possibility of reverter after a determinable fee cannot be assigned, as it is not an interest in land but a mere possibility of getting back an interest that has been granted to another, by the happening of the event that marks its limitation. Tiffany's Real Property, vol. 1, § 132, p. 474; North v. Graham, 235 Ill. 178, 85 N. E. 267, 18 L. R. A. (N. S.) 624, 126 Am. St. Rep. 189; Pond v. Douglass, 106 Me. 85, 75

Atl. 320. There are decisions, however, holding that such an interest as a possibility of reverter, if it may be called an interest, is assignable. Among decisions so holding are Scheetz v. Fitzwater, 5 Pa. 126; Slegel v. Lauer, 148 Pa. 236, 23 Atl. 996, 15 L. R. A. 547; Green's Adm'r v. Irvine (Ky.) 66 S. W. 278; Fall Creek School Township v. Shuman, 55 Ind. App. 232, 103 N. E. 677; Irby v. Smith, 147 Ga. 329, 93 S. E. 877. The tendency of court decisions seems to be to allow a greater freedom of alienation as we get farther away from those conditions of society in England which gave birth to statutes restricting alienation to prevent maintenance and champerty, and for the purpose of preventing the oppression of the weak by the great and powerful. Tiedman, Real Property (3d Ed.) § 307; Perry v. Smith (Tex. Com. App.) 231 S. W. 340. At common law, contingent remainders could not be assigned. Mudge v. Hammill, 21 R. I. 283, 43 Atl. 544, 79 Am. St. Rep. 802. But a number of courts in the United States, under statutes providing for the transfer of any interest in land, hold contingent remainders alienable when the person to take upon the happening of the contingency is ascertained. Morse v. Proper, 82 Ga. 13, 8 S. E. 625; Godman v. Simmons, 113 Mo. 122, 20 S. W. 972; McDonald v. Bayard Savings Bank, 123 Iowa, 413, 98 N. W. 1025. Holdings that the possibility of reverter after a determinable fee is assignable are in keeping with this more liberal tendency of the courts in matters of alienation.

The seven conveyances from Evans to Leonard conveyed to him an "equal one-half undivided interest in and to all the natural gas, oil, petroleum coal, and other minerals in, on, and under" the land described in those conveyances, "with the right to enter thereon, open mines, drill wells, lay pipes, and erect all structures and appliances necessary or convenient in searching for, procuring, caring for, storing, and removing" all such substances. Those conveyances purported to convey absolutely to Leonard one-half of what had already been conveyed to Weir, so long as Weir complied with the terms of the lease. The possibility of reverter to Evans was all, that remained in Evans at the time he executed the conveyance to Leonard, and a one-half interest in the possibility of a reverter is all that Leonard got by those conveyances. We think he did get that and, having received that, Caruthers did not get it by his conveyance of the land through Willoughby, and is not entitled to have Leonard's conveyances canceled as a cloud on his title to the land.

[6] Leonard did not, by those conveyances, get any right to any of the $1,662.90 provided by Weir's contract to be paid annually for the extension of time within which Weir or his assigns were to drill for oil. This money was paid for the privilege of drilling anywhere on the surface of the land. It did

not arise from natural gas, oil, or any of the minerals in which Leonard bought a one-half interest, and is not, in any manner, connected with those minerals. An interest in those minerals and the right to prospect for and develop them is all his conveyance purports to convey. Leonard's conveyances, by their own terms, provide that they are "subject to the terms and provisions of a lease (if valid) executed" by Evans and wife to Weir. Having held that this conveyance to Weir left nothing of the estate in the minerals in Evans, except the possibility of a reverter, Leonard obtained nothing more than a half interest in that possibility of reverter. The annual payments of $1,662.90 are in the nature of rents on the whole land. Upon a sale of land, rents not due upon it are payable to the purchaser. Porter v. Sweeney, 61 Tex. 216; Hearne v. Lewis, 78 Tex. 276, 14 S. W. 572. These payments for deferring operations were not assigned to Leonard in his conveyances, or otherwise. They passed to Willoughby on his purchase of the land and passed from Willoughby to Caruthers when Caruthers purchased it.

We recommend that the judgment of the Court of Civil Appeals, in so far as it decreed a recovery to Leonard of a part of the $1,152.90, be reversed, and that it be affirmed in so far as it denied cancellation of the conveyances from Evans to Leonard, and that the judgment of the district court, in so far as it denied Leonard a recovery of any part of the $1,152.90 be affirmed, and in so far as it decreed a cancellation of the conveyances from Evans to Leonard be reversed, and that judgment be entered denying the cancellation of those conveyances, and denying recovery, by Leonard, of any part of the $1,152.90.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and judgment rendered in accordance with the opinion of the Commission of Appeals.