## HUMBLE OIL & REFINING CO. v. DAVIS et al. (No. 6927.)*

(Court of Civil Appeals of Texas. Austin. March 3, 1926. Rehearing Denied April 7, 1926.)

1. **Reformation of instruments** ⬥45(9).

Evidence *held* sufficiently clear, satisfactory, and convincing to establish mutual mistake in oil lease as regarded annual rent-paying date, so as to warrant reformation.

2. **Acknowledgment** ⬥55(1).

Certificate of acknowledgment of lessor's signature, in legal form, is not open to attack of illegality in its taking in absence of knowledge by lessees, or showing of fraud, coercion, undue influence, or overreaching.

3. **Acknowledgment** ⬥43.

Where deed, executed and acknowledged with all essential formalities, recognized existent lease as valid and conveyed title subject thereto, any defect in acknowledgment of lease *held* cured.

4. **Reformation of instruments** ⬥29—As respects bona fides of purchase, inconsistency between rent-paying date and date expressed as that from which oil lease should run held sufficient ambiguity to put purchaser on inquiry as to mistake.

Where oil lease dated October 4th provided that it should remain in force for five years from date, provision requiring payment of rent

on each September 4th *held* sufficiently inconsistent to put purchaser of lands subject to lease on inquiry as to whether mistake had been made, so as to permit reformation as to it.

**5. Appeal and error ⬤⟾759.**

Proposition attacking trial court's ruling cannot be considered, in absence of assignment of error in brief supporting it.

**6. Evidence ⬤⟾518.**

Lawyer's construction of terms of lease is not competent evidence in support of its proper legal construction, it not being proper subject of expert testimony.

**7. Appeal and error ⬤⟾738—Assignment of error to admission of testimony of varied character, being multifarious, cannot be considered.**

Assignment that court erred in admitting testimony of witness as complained of in several bills of exception, one of which complained of entirely different character of evidence than the others, is multifarious and cannot be considered.

**8. Covenants ⬤⟾100(1).**

Where land was conveyed, subject to oil lease, with warranty of title, subsequent reformation of lease because of ambiguity on its face *held* not basis for liability of grantors on warranty.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Suit by E. R. Davis and another against the Humble Oil & Refining Company and others. Judgment for plaintiffs, and defendant named appeals. Affirmed.

W. M. Cleaves, of Houston, and H. B. Daviss, of Corsicana, for appellant.

Callicutt, Upchurch & Howell and Prince & Taylor, all of Corsicana, for appellees, J. L., M. A., W. T., O. B., A. S., and Janie E. Hill.

Lawrence Treadwell, of Corsicana, for other appellees.

McCLENDON, C. J. Plaintiffs below were E. R. Davis and W. W. Bates. Defendants below were Humble Oil & Refining Company and J. L. Hill and wife, M. A. Hill. There were other defendants, but they are not involved in the appeal. The purpose of the suit was to reform an oil lease on 20 acres of land. The lease was dated October 4, 1921, and was what is termed a "commercial lease." It was for a period of five years, or as long thereafter as oil or gas was produced in paying quantities. There was a down payment of $120 and annual rentals of $30 each. The date inserted for the payment of the first annual rental was September 4, 1922. Plaintiff sought to have this date changed to October 4, 1922, on the ground that September 4, 1922, was inserted by mutual mistake. It was also sought to reform the lease as-regards the description of the property; but this issue is

not involved in the appeal and will not be further noted. The trial was to the court without a jury, and judgment was rendered reforming the lease as to the date of payment of annual rentals as prayed for. From this judgment the Humble Company has appealed.

We have reached the conclusion that the trial court's judgment should be affirmed, and will confine our statement to so much of the record as is necessary to a clear understanding of the controversy, in view of the conclusions we have reached.

The facts in the case, in so far as they control these conclusions, are without substantial controversy, and, briefly summarized, follow:

The 20 acres covered by the lease was a part of a 130-acre tract which on and prior to October 4, 1921, was community property and homestead of Hill and wife. On or shortly before October 4, 1921, Hill met one Fleming in Corsicana and began negotiations for an oil lease, in which negotiations Hill expressed a willingness to make a commercial lease covering the 20 acres on the basis of $5 an acre bonus and $1.50 an acre annual rental. The terms of the lease were not further discussed. Fleming then went to Davis and Bates and arranged with them to take over the lease at $1 an acre profit to Fleming. Davis, Bates, and Fleming then sought out Hill, and the general terms of the lease, that is, the amount of bonus and annual rental, were agreed to, and when the question arose as to who would draw the lease, Fleming suggested having it done by Miss Ruth Upchurch, who was a stenographer at the Corsicana National Bank. All of the parties then went to the bank, and Fleming handed to Miss Upchurch a printed commercial form of lease and gave her the description of the land and had her fill in the several blanks. When her work was concluded, she handed the instrument to Fleming, who glanced over it and noted that in the several blanks for dates September was inserted instead of October. There were three of these blanks in the instrument proper and two in certificates of acknowledgment. Fleming then called Miss Upchurch's attention to this error and requested that it be changed. She took the instrument and made the changes in two of the blanks in the instrument and in the acknowledgment certificates, but by oversight left September in the blank calling for annual rentals. This error was not discovered by Fleming nor any of the parties. The instrument was handed to Hill. He took it home and discussed it with his wife, who signed it. The next day, October 5, 1921, Hill took the instrument to a notary in Corsicana, who took Hill's acknowledgment in person and called Mrs. Hill over the telephone and took her acknowledgment in that manner. Hill then took the instrument to Fleming, who de-

livered it to Davis and Bates; the consideration being then fully paid. Neither Fleming nor Davis and Bates had any knowledge that Mrs. Hill's acknowledgment was taken over the telephone. The instrument was then placed of record by Davis and Bates. The evidence is quite clear that none of the parties discovered the error in date; that Mrs. Hill knew nothing at all about it; and that she relied entirely on her husband as her agent in negotiating the lease.

The lease begins, "Agreement, made and entered into the 4th day of October, 1921," and concludes: "In testimony whereof, we sign this the 4th day of October, A. D. 1921." Other pertinent portions of the lease follow:

"It is agreed that this lease shall remain in force for a term of five (5) years from this date, and, as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

"If no well be commenced on said land on or before the 4th day of September, A. D. 1922, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or lessor's credit in the Corsicana National Bank at Corsicana, Texas, or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of thirty ($30.00) dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments, or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"Should the first well drilled on the above-described land be a dry hole, then, and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume payment of rentals in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals as above provided, that the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments."

Davis and Bates paid to Hill the $30 annual rental on September 30, 1922; but no question was raised as to the time of payment, and Hill did not know that the payment was made after the date specified in the lease. About June 28, 1923, the Humble Company entered into negotiations with Hill looking to the purchase of the 130-acre tract, and on that date a sales agreement was executed. This agreement did not mention any oil leases on the property, but the Humble Company's agent in the transaction was cognizant of the existence of such leases. Hill furnished the Humble Company an abstract; and a report of the company's attorney to it, calling attention to the oil lease in question, described it as being "upon commercial form of five years with provision for an annual rental." A further report on the title was to the effect that this lease was still subsisting and in force. The Humble Company was willing to purchase the property subject to this as well as other existing leases, and the deed was drawn and executed with all legal formalities, whereby Hill and wife conveyed the property by general warranty to the Humble Company. The deed, however, expressly reserved to Hill and wife one-sixteenth of the oil produced on the property, and provided that the conveyance was subject to certain designated oil and gas leases, among them the lease in question; "but," the deed reads, "covers and includes all royalties and rentals provided in said leases to be paid to lessor, save and except one-half of one-eighth oil royalty provided for therein, which is hereby specifically reserved to J. L. Hill and wife, M. A. Hill, the grantees herein, in line with the preceding paragraph hereof." The Humble Company paid Hill and wife under this deed approximately $300 an acre for the land. Shortly after this purchase, which was consummated on July 3, 1923, the Humble Company addressed a communication to Davis and Bates, giving notice of the conveyance, and that the Humble Company was the proper party to whom to pay rentals. On September 20, 1923, Davis and Bates mailed a check for $30 to the Humble Company in payment of the 1923 annual rental. This check was at once returned by the Humble Company, on the ground that the payment came too late. Davis and Bates then deposited this amount to the credit of the Humble Company in the depository named in the lease, which the Humble Company declined to accept. The Humble Company had no knowledge that any mistake had been made as to the date of the payment of annual rentals outside of what might be inferred from the instrument itself. Davis and Bates did not discover that the mistake had been made until after September 4, 1923, but were under the impression up to that time that the date was October 4th.

The Humble Company contends: (1) That the evidence was insufficient to establish mutuality of mistake, in that neither Hill nor his wife, and especially the latter, ever agreed to October 4th as the annual rental payment date; (2) that the lease was void because the property was homestead and Mrs. Hill's acknowledgment was not taken in accordance with law; (3) that it terminated ipso facto for failure to pay the annual rentals in 1922 on or before September 4th, the contention in this regard being that the property was homestead and Hill could not waive a

forfeiture by accepting rentals after they were due; (4) that under its deed from Hill and wife it was an innocent purchaser of the land, charged only with the lease as executed and recorded, and that whatever might be the rights of the lessors and lessees as between themselves, the oil company had the right under its purchase to enforce the lease in strict accordance with its terms as written and recorded; and (5) that in the event reformation of the lease is granted, 'it is entitled to recover against Hill and wife on their warranty the entire royalty under the lease.

The appellees Davis and Bates contend, on the other hand: First, that the validity of the acknowledgment of Mrs. Hill cannot be questioned, (a) because no fraud or injury was shown, and (b) because the lease was republished in the deed from Hill and wife to the Humble Company; and, second, that the Humble Company is not a bona fide purchaser (a) because the lease on its face carries a palpable ambiguity arising from the October date of the lease and September date of the annual rentals, which ambiguity was sufficient to excite suspicion and require inquiry as to how it arose, and (b) because the Humble Company did not acquire any title to or interest in the mineral rights conveyed by the lease, but only the inchoate right of the possibility of reverter.

These contentions embody, we think, the controlling questions in the case. Other questions, which we may find necessary to decide, will be stated later.

[1] The evidence is not only sufficiently "clear," "satisfactory," and "convincing" to establish a mutual mistake between the original parties to the lease as regards the annual rental payment date, but leads to no other reasonable conclusion. The terms of the lease, as discussed and agreed upon by Hill, Fleming, Davis, and Bates, were a commercial lease providing for a bonus of $6 an acre, of which Fleming was to get $1 an acre, and $1.50 an acre annual rentals. The date of payment of the annual rentals was not discussed by the parties, but it is apparent that it was presumed to conform to the date of the lease. There is no suggestion in the testimony of any witness that September 4th was ever mentioned by any one at any time in connection with the lease. Its insertion therein has but one explanation in the testimony— Miss Upchurch erroneously used September instead of October, in filling in the blanks, and when this error was discovered by Fleming and called to her attention, she failed, through oversight, to make the correction in the annual rental payment date, while correcting the error in other portions of the instrument. Neither Hill nor his wife knew of the discrepancy between the date of the instrument and the rental payment date. Hill acted for his wife in the negotiations, and if the minds of the parties ever met at all, they met in the negotiations just preceding the drawing up of the lease upon terms which they all understood to be quite clear and definite, as contemplating a lease on commercial form for a definite bonus or down payment, and a definite annual rental. There is no suggestion that the form of the lease was in any way variant from that agreed upon; and the evidence clearly and convincingly shows, if in fact it does not do so conclusively, that September was inserted in this form, wherever a date blank appeared, by error of the scrivener, and through inadvertence the correction was not made by her in the rental payment date blank. We have not thought it necessary to discuss in detail the various contentions upon this issue which appellant makes and discusses with so much elaboration. We deem it unimportant whether Fleming in giving the data to Miss Upchurch, and pointing out to her the error in date, was acting in a representative capacity as agent for Hill alone, for Hill and wife alone, for the lessees alone, or for all or none of the parties. That the mistake occurred, the manner of its occurrence, and that it was mutual, are to our mind quite clear. We agree with the general principles of law and their supporting authorities, which appellant sets forth. But in so far as they are urged as counter to the above conclusions they do not apply to this case.

[2] Whether Mrs. Hill's acknowledgment was taken in conformity with law we find unnecessary to consider. The certificate was in legal form, and no knowledge of illegality was had by Fleming or the lessees. Neither by allegation nor proof did appellant show any "fraud, coercion, undue influence or overreaching," and the acknowledgment was therefore not open to attack on account of illegality, if any, in its taking. See Cox v. Oil Co. (Tex. Civ. App.) 265 S. W. 196 (writ of error refused), and authorities there cited.

[3] Aside from this, however, the deed from Hill and wife to appellant purged the lease of any previously existing vice. This deed was executed and acknowledged with all essential legal formalities and was binding on all the parties to it. It recognized the lease as valid at that time, it conveyed to appellant one-half of the royalties reserved in the lease, and it provided expressly that appellant took title to the land conveyed subject to the lease.

[4] We rest our conclusion that appellant cannot defeat reformation of the lease on the doctrine of bona fide purchaser, upon the ground that the September date. of annual rental payments is inconsistent with other portions of the lease as written and recorded, and that this inconsistency imposed the duty of inquiry. The date of the lease is October 4, 1921; it expressly provides that "it shall remain in force for a term of five (5) years from this date." Five years "from this date" could only mean five years from October 4, 1921, or October 4, 1926. If we apply the

date September 4, 1922, as the first annual rental payment date, then the following questions become pertinent: How many September 4th payments are necessary to preserve the lease up to October 4, 1926? Does the lease require a payment on September 4, 1926? If not, what provision preserves the lease for the full five-year period; that is, up to October 4, 1926? If a payment is required on September 4, 1926, what provision of the lease governs as to how long such payment extends the lease; that is, does the five-year period control, thus extending the lease for only 30 days from the date of the payment, or is the lease extended for another year, thus carrying it eleven months beyond the five-year period? The language of the instrument does not afford an answer to these questions. Of course, if there had been no mistake made, and the instrument as drawn expressed the true agreement of the parties and parol testimony was not resorted to for the purpose of clearing up this ambiguity, it would be the duty of the court, should the question be presented for adjudication, to arrive at the intention of the parties by applying recognized canons for the construction of written instruments. But in applying these canons it could hardly be seriously contended that the instrument itself furnished any satisfactory evidence of what the true intention of the parties was. Three possible constructions are conceivable, but each presents the difficulty of being in direct contradiction of some portion of the instrument: (1) The payment on September 4, 1925, extended the lease to October 4, 1926, a period of thirteen months; or (2) the payment on September 4, 1926, extended the lease for only one month; or (3) such payment extended the lease eleven months beyond the five-year period. The language of the instrument creates, but affords no solution for, this three-horned dilemma. The solution afforded by the application of canons of construction would be one imposed by the necessity for some solution, but would not be predicated upon any assurance that the true intention of the parties had been arrived at. The conclusion is irresistible, either that a mistake has been made, or the parties have failed to embody in the written document all the terms of their agreement. A patent ambiguity is, we think, clearly presented, and this patent ambiguity would open the door to parol testimony for its explanation. Manifestly the instrument gave notice to every one dealing with it, of this ambiguity.

Appellant's contention that it is a bona fide purchaser is rested upon the proposition that it purchased the rights of Hill and wife as they appeared from the recorded instruments evidencing those rights. The contention is perfectly sound as to instruments which do on their face define those rights. But where the instruments themselves present inconsistencies or ambiguities, a different situation is presented. The question then arises: What would a person of ordinary prudence do in the premises? Would he make inquiry from the proper sources to ascertain the cause of the inconsistency or ambiguity, or would he take the chances incident to litigation in case the questions suggested by the language of the instrument should ever become vital? We think these questions answer themselves. If the date of payment, or the number of payments, or the exact duration of the lease, was important as having any material bearing upon the question whether appellant would or would not purchase the land upon the agreed terms, then clearly ordinary business prudence would require that the ambiguity be cleared up before the purchase was consummated. And this we think furnishes the true test whether the duty of inquiry was imposed. Certainly if the questions raised by the ambiguity were of no material consequence, then there would be no occasion for future litigation and no incentive to inquiry. Appellant's whole case, however, is predicated upon the assumption that the September date was of vital importance to its rights at the very time of its purchase, and materially affected the thing it was acquiring. If so, appellant was clearly charged with knowledge of the ambiguity, and that parol evidence might be resorted to to clear it up. We think it unnecessary to cite authorities in support of the proposition that notice either actual or constructive is fatal to the plea of bona fide purchaser. If we are correct in our interpretation of the lease as being ambiguous, then it follows that appellant was not a bona fide purchaser.

Whether the assignee of an oil lease lessor's possibility of reverter acquires such a property interest in the premises as entitles him to the protection of a bona fide purchaser becomes immaterial under the above holding. The nature of such interest is discussed and determined, and its assignability adjudicated, in the case of Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779. The trend of decision in this state is to extend the doctrine of bona fide purchaser to every character of assignable interest or right in real estate. There are very cogent reasons why this doctrine should be held applicable to the possibility of reverter in oil leases, especially where the assignee of the right is also the grantee of the land covered by the lease. In Hale v. Hollon, 35 S. W. 843, 36 S. W. 288, 14 Tex. Civ. App. 96; Id., 39 S. W. 287, 90 Tex. 427, 36 L. R. A. 75, 59 Am. St. Rep. 819, the doctrine was applied to the grantor's expectant interest in the estate of his ancestor, an interest certainly no less inchoate, uncertain, or contingent than the possibility of reverter in a commercial oil lease.

The remaining issues between appellant and Davis and Bates relate to rulings upon the admission of testimony.

[5] By its first proposition, appellant at-

tacks the trial court's ruling in sustaining objections to a question it propounded to Mrs. Hill. There is no assignment of error in appellant's brief to support this proposition, and for that reason it cannot be considered.

[6] By its second proposition, appellant attacks the trial court's ruling excluding the following deposition testimony of Hines H. Baker, the attorney of appellant who examined the title when the purchase from Hill and wife was made:

"I had theretofore examined numerous leases where the rental payment date was different from the date of the lease, and had never before in my experience as an attorney had this question raised. This provision in no way affected the validity of the lease, but simply meant that the initial payment or bonus preserved the life of the lease in the absence of drilling for eleven months instead of for twelve months."

Whether the lease was ambiguous was a question of law for the court, and was not a subject for expert testimony. The experience of the witness in examining other leases could not remove the ambiguity, and his construction of the terms of the lease was not evidence in support of its proper legal construction. The trial court was correct, we think, in excluding the testimony.

[7] By its third and fourth propositions, appellant attacks the trial court's ruling in admitting certain testimony of Miss Upchurch. The ruling upon this testimony is preserved in bills of exceptions numbered 1 and 3, respectively. The only assignment of error relating to the testimony of Miss Upchurch is the fifteenth, which reads:

"The court erred against this defendant, the Humble Oil & Refining Company, in admitting in evidence the testimony of Miss Ruth Upchurch as complained of and more fully set out in this defendant's bills of exceptions Nos. 1, 3, and 23, respectively."

The twenty-third bill of exceptions complains of testimony of Miss Upchurch and others of a character entirely different from that complained of in bills numbered 1 and 3. Under a list of authorities too long to enumerate, this assignment is multifarious and cannot be considered. The propositions, of course, fall with the assignment.

[8] We are unable to find any substantial merit in appellant's contention that, if reformation of the lease is permitted, then it is entitled to recover of Hill and wife their reserved interest in the minerals in the land conveyed and their reserved interest in the royalties which the lease carries. The deed from Hill and wife to appellant expressly excepted from the conveyance whatever passed to the grantees in the lease. There could be no failure of title, and therefore no liability on the warranty by reason of the existence and enforcement of the lease. Conceding that the warranty obligated Hill and wife to protect the title against all claims other than those which might be asserted under the lease as written and recorded, still that instrument was ambiguous on its face, and as such carried notice to those dealing with it that it was subject to explanation or correction. The same considerations which defeat appellant's claim to protection as bona fide purchaser preclude recovery against Hill and wife on their warranty.

We find no error of substance in the trial court's judgment, and it is therefore affirmed.

Affirmed.