**HUMBLE OIL & REFINING CO. v. DAVIS et al. (No. 695—4614.)**

Commission of Appeals of Texas, Section B. June 4, 1927.

**1. Reformation of instruments ⬅️29—Inconsistency between rent-paying date and date of lease held not to put purchaser on inquiry as to whether mistake was made.**

Where oil lease, dated October 4th, provided that it should remain in force for five years from date, provision requiring payment of rent on each September 4th *held* not so inconsistent as to put purchaser of land subject to lease on inquiry as to whether mistake had been made so as to permit reformation as to it.

**2. Mines and minerals ⬅️78(2)—Privilege of deferring commencement of well held limitation on period of grant, and, on failure to drill or pay, estate reverted to lessors.**

Provision in oil lease, dated October 4th, that, if no well was commenced before September 4th following, lessees could make payment, which covered privilege of deferring commencement of well for one year, *held* not a forfeiture provision but limitation on term of grant and, on failure to drill or pay, estate created by lease ceased and reverted to lessors.

**3. Reformation of instruments ⬅️29—Purchaser of land as assignee of royalty rights, not being put on inquiry by ambiguity in lease, acquired interest as innocent purchaser.**

Where ambiguity in oil lease did not put purchaser of land subject to lease on inquiry as to whether mistake was made in lease, purchasers of land from lessors as assignee of royalty rights of lessors acquired interest in realty within the innocent purchaser rule.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by E. R. Davis and another against the Humble Oil & Refining Company and others. Judgment for plaintiffs on appeal of named defendant was affirmed by the Court of Civil Appeals (282 S. W. 930), and named defendant brings error. Judgments of the district court and the Court of Civil Appeals as between named defendant and plaintiffs reversed and rendered; in other respects judgments affirmed.

H. B. Daviss, of Corsicana, and W. M. Cleaves and Hines H. Baker, both of Houston, for plaintiff in error.

Lawrence Treadwell, Callicutt Upchurch & Howell, and Prince & Taylor, all of Corsicana, for defendants in error.

POWELL, P. J. J. L. Hill and wife, in 1921, owned 130 acres of land near Corsicana. It was their community homestead. On October 4, 1921, for a down payment of $120, they leased 20 acres of their land, for oil and gas purposes, to E. R. Davis and W. W. Bates. The pertinent portions of this lease read as follows:

"It is agreed that this lease shall remain in force for a term of five (5) years from this date, and, as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

"If no well be commenced on said land on or before the 4th day of September, A. D. 1922, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or lessor's credit in the Corsicana National Bank at Corsicana, Tex., or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of thirty ($30.00) dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments, or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Should the first well drilled on the above-described land be a dry hole, then, and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee, on or before the expiration of said twelve months, shall resume payment of rentals in the same manner as hereinbefore provided. And it is agreed that, upon the resumption of the payment of rentals as above provided, the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments."

This lease was duly filed for record by the lessees on October 13, 1921, and duly recorded eight days later. After its record, Davis, one of the lessees, kept it in his own possession continuously until the latter part of September, 1923, when preparations for commencing the instant suit were about perfected.

On July 3, 1923, Hill and wife, for a total cash consideration of $39,291, executed a general warranty deed to the plaintiff in error, conveying their entire 130 acres, including the 20 acres covered by aforesaid Davis and Bates lease. With specific reference to oil matters, we quote from that deed as follows:

"The said J. L. Hill and wife, M. A. Hill, hereby specifically reserve to themselves and except from this conveyance one-sixteenth of all oil that may be produced from said above-described premises, which shall be delivered to them on the premises or in the pipe lines with which connections may be made free of cost and as a royalty; it being understood, however, that the grantee herein, its successors and assigns, shall have the right to deduct fuel oil used in the operation of said premises for oil and gas before the royalty herein reserved is calculated. This reservation shall in no sense be taken as imposing upon the grantee any obligation whatever in connection with the development of the above-described premises for oil.

"This conveyance is made subject also to the following oil and gas leases."

Then follows a description of three different mineral leases, one of which is the one now in suit. Then there follows this provision:

"But covers and includes all royalties and rentals provided in said leases to be paid to lessor, save and except one-half of one-eighth oil royalty provided for therein, which is hereby specifically reserved to J. L. Hill and wife, M. A. Hill, the grantees herein, in line with the preceding paragraph hereof."

Before purchasing this property, plaintiff in error had its attorneys examine an abstract of title thereto, which abstract included the lease in suit, just as it was written.

After this purchase, the Humble Company notified the lessees that future payment of rentals should be made to it. In compliance with that notice, the lessees tendered $30 to the said company on September 20, 1923, with a view of deferring the drilling of a well during twelve more months. The company declined the tender on the ground that it came sixteen days too late, at the same time claiming that the lease, by its very terms, had ceased and determined. About thirty days later, Davis and Bates brought this suit against various parties, including the Humble Company, asking that their lease be reformed as against all defendants, so as to have this rental payment date read October 4, 1922, instead of September 4, 1922, and asking also that they be quieted in their title to said lease as so reformed. In its answer to this petition, the Humble Company presented many defenses, as shown by the opinion of the Court of Civil Appeals herein, and wound up as follows:

"Wherefore, this defendant prays that it go hence without a day with its costs, and that this honorable court decree to defendant the fee-simple title to the premises described in plaintiffs' petition in all respects free and clear from any and every claim by or on behalf of plaintiffs in this cause."

The case was tried before the court, without a jury. So far as material to our opinion, the trial court entered the judgment as prayed for by Davis and Bates, reforming the lease as to all defendants, and quieting their lease title to the premises as against the same defendants. Upon appeal to the Court of Civil Appeals, the judgment of the district court was affirmed. See 282 S. W. 930.

The Court of Civil Appeals passes on various questions, all of which are quite interesting. In the view we take of the two questions we shall hereafter discuss, we shall pretermit any views upon the other questions. We adopt this course, for the reason that, even if the Court of Civil Appeals be correct in all these other phases of the case, it would not change the judgment we shall recommend.

The dual nature of the Humble Company's chief contention is gathered from this quotation from the application:

"The discussion above, we think, demonstrates that there was no mutual mistake in the Davis and Bates lease and therefore no right of reformation as against Hill and wife. If there is no ground for reformation against them, certainly there is none against their grantee, the plaintiff in error. However, even if there were a mistake made which was mutual to all parties to the contract and Davis and Bates had the right to reform same as against Hill and wife as parties thereto, such, however, would give no grounds for reformation against the plaintiff in error, unless it should be shown that it had notice or knowledge of the mistake and did not purchase in good faith and upon a valuable consideration paid; that is to say, unless the defendants in error, Davis and Bates, could show that the plaintiff in error bought with knowledge or notice of the mistake, they could not reform as against it. It is well established that reformation will never be decreed to the injury of an innocent purchaser for value. Pomeroy's Equity Jurisprudence, vol. 5, p. 4738; Simkins on Equity (2d Ed.) p. 526; 34 Cyc. 956; 23

Ruling Case Law, 340; McLouth v. Hurt, 51 Tex. 115; White v. Frank, 91 Tex. 66, 40 S. W. 962;

"As is said in 34 Cyc. 956: 'A bona fide innocent purchaser for value and without notice is the peculiar favorite of a court of equity, and the authorities unite on the proposition that a mistake in a written instrument will not be corrected against such party, whether the mistake occurs in a deed, a mortgage, or any other instrument. A stronger statement of the rule involved is that, where the party seeking relief committed the mistake and is in default, and defendant is an innocent purchaser and is in no default, when one of two parties must suffer, the loss must fall upon him who is in default.'"

The Court of Civil Appeals, as we read its opinion, takes no issue with the correctness of the last-preceding quotation. And that court further finds that the Humble Company had no actual notice of this alleged mutual mistake. But it says that the lease itself, under its own terms, was patently ambiguous and sufficient to put the Humble Company upon inquiry, and that such inquiry would have led to the discovery of the mutual mistake alleged; and, by reason of its failure to make inquiry, it was at fault and could not be an innocent purchaser. In just a word, the Court of Civil Appeals says:

"We rest our conclusion that appellant [Humble Company] cannot defeat reformation of the lease on the doctrine of bona fide purchaser, upon the ground that the September date of annual rental payments is inconsistent with other portions of the lease as written and recorded, and that this inconsistency imposed the duty of inquiry." Humble Oil & Refining Co. v. Davis, 282 S. W. 933.

The Court of Civil Appeals then proceeds to give its reasons for its holding just quoted. See pages 8 and 10, inclusive, of its opinion accompanying this record.

[1] In just a word, the Court of Civil Appeals says the contract is ambiguous because a conflict could arise between the clause of the contract which terminates it in five years unless oil or gas is being produced at that time by lessee and the other clause which gives the lessee the right to defer drilling of a well upon payment of a certain rental. The Court of Civil Appeals says that, since the contract itself is dated October 4, 1921, the five-year period would end October 4, 1926; that, under the drilling and development clause, the lessees would have the right to pay rentals on September 4, 1922, and each twelve months thereafter, and in that way delay the commencement of a well for an additional twelve months from the date of each such payment; that such a practice would extend the lease to September 4, 1927, or eleven months beyond the five-year period. Because of this possible conflict in the two clauses, the Court of Civil Appeals says the Humble Company, otherwise an innocent purchaser, was put upon inquiry as to a reason

for this apparent conflict; that, not having pursued this inquiry, it was at fault, and therefore a plain provision of a written instrument should be nullified even against the plaintiff in error upon the ground of mutual mistake on the part of those who were parties to the original lease. The Court of Civil Appeals concedes, of course, that this change cannot be made in this instrument unless that company was at fault. This rule of law is well settled. Was it so at fault? We think not.

The five-year clause of this contract is subject to the all-important provision that the lease will determine unless a well be drilled by September 4, 1922, or a rental payment in lieu of said drilling be made on or before that date. If such rental payment is made in lieu of said drilling, the contract provides that the drilling of the well may be deferred for another twelve-month period. There is no ambiguity about this provision, and the plaintiff in error had the right to rely upon the same.

[2] When the lessees failed, as they did, on or before September 4, 1923, to drill a well or make a payment of $30 in lieu of said drilling, the lease, ipso facto, as per its express terms, determined and came to an end. This clause was not a forfeiture provision. It was a limitation upon the term or period of the grant, and, upon the failure to drill or pay as aforesaid, the estate created by the lease ceased and reverted to the lessors. At the time of such failure of the lessees to drill or pay, plaintiff in error had succeeded, by purchase, to the rights of the original lessors.

[3] It is also contended by defendants in error that the doctrine of innocent purchaser cannot, in any event, apply to the Humble Company, because the assignee of an oil lease lessor's possibility of reverter does not acquire such a property interest in the premises as entitles him to the protection of such a doctrine. The Court of Civil Appeals, in discussing this contention, said:

"Whether the assignee of an oil lease lessor's possibility of reverter acquires such a property interest in the premises as entitles him to the protection of a bona fide purchaser becomes immaterial under the above holding. The nature of such interest is discussed and determined, and its assignability adjudicated in the case of Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779. The trend of decision in this state is to extend the doctrine of bona fide purchaser to every character of assignable interest or right in real estate. There are very cogent reasons why this doctrine should be held applicable to the possibility of reverter in oil leases, especially where the assignee of the right is also the grantee of the land covered by the lease. In Hale v. Hollon, 14 Tex. Civ. App. 96, 35 S. W. 843, 36 S. W. 288; Id. 90 Tex. 427, 39 S. W. 287, 36 L. R. A. 75, 59 Am. St. Rep. 819, the doctrine was applied to the grantor's expectant interest in the estate of his ancestor, an interest certainly no less inchoate, uncertain, or contingent than the possibility of reverter in a commercial oil lease."

The Court of Civil Appeals clearly indicates that it would have overruled this immediate contention, had it been necessary to pass upon it. Since this writ was granted, and in fact during the early part of this month, our Supreme Court answered certified questions in the case of Lee Hager et al. v. D. W. Stakes, Tax Collector, et al., 294 S. W. 835. In that case, the royalty provision under consideration was like the one we have in the case at bar. And in the Hager Case it was decided that the lessor's royalty was a present interest in real estate and taxable where the land lay. So, under this most recent authority, the Humble Company, as assignee of the royalty rights of the Hills, acquired an interest in realty and is well within the innocent purchaser rule.

As we read the opinion of the Court of Civil Appeals, it would have rendered judgment for the Humble Company, but for the one holding that it was in default in not inquiring, before trading, as to the reason for the alleged ambiguity in the contract. As we view it, there was no ambiguity in the contract placing upon the company any duty of inquiry.

In view of what we have said, we recommend that the judgments of the district court and Court of Civil Appeals, as between the Humble Company and Davis and Bates, be reversed, and that judgment be rendered by the Supreme Court decreeing to the plaintiff in error the fee-simple title to the premises described in the lease aforesaid, in all respects free from any claim by the defendants in error E. R. Davis and W. W. Bates. We further recommend that the plaintiff in error recover of and from the said Davis and Bates all costs of court in all the courts. In all other respects we recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals as between Humble Company and Davis and Bates reversed, and judgment rendered for plaintiff in error Humble Company against Davis and Bates. In all other respects, judgments of the Court of Civil Appeals and district court affirmed, as recommended by the Commission of Appeals.