## MYRICK v. LEDDY.
### No. 7568.

Court of Civil Appeals of Texas. Austin. Feb. 18, 1931.

Rehearing Denied March 18, 1931.

Shropshire & Adkins, of Brady, for appellant.

Wilkinson & Wilkinson, of Brownwood, for appellee.

BAUGH, J.

Myrick contracted to sell and convey to Leddy marketable title to 520 acres of land in McCulloch county, Tex. Leddy deposited $310 as earnest money on the contract, to be paid on purchase price if the contract were performed; or, in the event of breach thereof by Leddy, to go to Myrick as liquidated damages. Leddy rejected the title tendered on the grounds that it was not marketable. Myrick sued for the $310, alleging that he had tendered a marketable title. The trial court rendered judgment against him, from which he has appealed. The sole issue is, therefore, the marketability of the title to the land as shown by the abstract furnished.

Two objections were raised to the title, and appellant concedes that, if either of them rendered the title unmarketable, appellant was not entitled to recover. The first of these was that as to part of said land only a limitation title was shown. The facts in this respect were as follows: 200 acres of this land was patented to S. B. Hurlbut in 1856. No conveyance by him was shown of record. The record disclosed an ex parte affidavit dated May 7, 1898, signed by two citizens of Galveston, stating that Hurlbut died in 1864 and "left surviving him only two children," naming them. These two named daughters, joined by their husbands, as the sole heirs of S. B. Hurlbut, conveyed the land in 1870. No objection to the subsequent title was made other than to the conveyances to appellant.

■■ It is now well settled that limitation title, based upon adverse possession, is not a marketable title. Rabinowitz v. Darnall (Tex. Civ. App.) 2 S.W.(2d) 930, 932, and authorities there cited; Owens v. Jackson, 35 S.W.(2d) 186, decided by this court January 14, 1931. A limitation title is unmarketable because resort must be had to proof not disclosed by the record; and for this purpose ex parte affidavits stating facts which if proven would establish title by limitation are not admissible.

■ This rule, however, is not so rigidly enforced with reference to proofs of heirship. Such proofs are of matters not ordinarily subject to registration, and of necessity must often be established by parol. In the instant case, there had been of record for more than thirty years an affidavit of credible persons that grantors who conveyed the land in question in 1870 were the only children of S. B. Hurlbut, deceased. In that deed they recited themselves as the sole heirs of S. B. Hurlbut, deceased. After this lapse of time, it being undisputed that no adverse claimants have appeared nor asserted any interest in said land, we are of the opinion that these facts, as disclosed by the record, and the presumption which must now be given to these recitals that the facts therein stated are true, remove any reasonable doubt as to outstanding claims in heirs of S. B. Hurlbut, who has been dead for more than 65 years.

As said by Justice Smith in Texas Auto Co. v. Arbetter (Tex. Civ. App.) 1 S.W.(2d) 334, 336:

"The term 'marketable title,' when applied to real property, means one reasonably free from such doubt as would affect the market value of the estate; one which a prudent man with knowledge of all the facts and their legal bearing would be willing to accept (5 Words and Phrases, First Series, page 4388 et seq.); not doubts based on captious, frivolous, or astute niceties, made up for the occasion, but grave and reasonable doubts, such as would induce a prudent man to hesitate in accepting a title affected by them, and such as would make it possible or reasonably probable that the purchaser's right may become a matter of investigation, and thus affect its value. A marketable title is one that will bring as high a price in the market with the purchaser's objection to its sufficiency as without."

Not only do we conclude as a matter of law, and such question is one for the court, that there was no reasonable doubt as to the validity of the title so far as any claim of S. B. Hurlbut's heirs is concerned, but the trial court found from the record that said title "had been frequently sold under the claim of the purported heirs of S. B. Hurlbut, as shown by said affidavit, and apparently for its full market value."

■ The second objection urged as rendering the title unmarketable was based upon the following: On December 30, 1908, A. N. Bryson and wife, then owners of the 520 acres in question, conveyed same by deed of gift to their daughter, Mrs. H. T. Awalt, which deed provided that, if the grantee or her heirs undertook to sell, mortgage, or otherwise dispose of said land within 25 years, their conveyance to her should be absolutely void, and the land should revert to the said A. N. Bryson and wife, or their other heirs, there being four other children. Subsequently, in 1917, A. N. Bryson made a will wherein his wife, Maria Bryson, was made residuary legatee. He died, and this will was duly probated. Subsequent to his death, the daughter, Mrs. H. T. Awalt, died. On July 22, 1929, and within the 25-year period, G. B. Awalt, surviving husband of Mrs. H. T. Awalt, joined by their five children, and Mrs. Maria Bryson, conveyed said 520 acres of land to appellant. None of the other children of A. N. and Maria Bryson joined in said deed.

The conveyance by the surviving husband and children of Mrs. H. T. Awalt to appellant was clearly in violation of the express provisions of the deed from A. N. Bryson and wife to her, and subjected the original grant to forfeiture if it did not automatically work a forfeiture. The question therefore is, Would the reversion occasioned thereby pass to Mrs. Maria Bryson, as residuary legatee under his will, or would it vest, in part at least, in their other four children?

Prior to the attempted conveyance by the grantees, the estate reserved was only a possibility of reverter. Such "possibility of reverter" was at common law not an estate which could be assigned, alienated, or devised. 21 C. J. 1017; 40 Cyc. 1048; 28 R. C. L. 287. Article 8282, R. S., relating to this subject, provides, however, that a testator may devise any "estate, right, title and interest in possession, reversion or remainder,

which he has, or at the time of his death shall have, of, in or to any lands," etc. At the time of the death of A. N. Bryson he was possessed of a right of reversion, though dependent upon conditions subsequent; and it would seem that the statute itself is sufficiently broad to permit the passage under his will of this right to Mrs. Maria Bryson as his residuary legatee. The exact question of a devise of such "possibility of reverter" does not appear to have been before the appellate courts; but the power to assign or transfer such right was before the court in Caruthers v. Leonard (Tex. Com. App.) 254 S.W. 779, 780. See, also, Perry v. Smith (Tex. Com. App.) 231 S.W. 340. In those cases it was expressly held that the common-law rule against alienation of such rights in real estate does not apply in Texas, but that same are assignable. We can see no distinction between passing such a right by assignment and by devise. And, in addition to the rule announced in the cases cited, there is the added force of article 8282 which, if not expressly, by clear implication, authorizes the devise of such a right in reversion. See, also, Humble Oil & Ref. Co. v. Davis (Tex. Civ. App.) 282 S.W. 930, 934; Rosson v. Bennett (Tex. Civ. App.) 294 S.W. 660, 662; Bibb v. Nolan (Tex. Civ. App.) 6 S.W.(2d) 156, 157. In view of these authorities, we think there can be no doubt but that the right of reversion, vested in A. N. Bryson at the time of his death, passed by his will to his wife, Maria Bryson, as the residuary devisee. She having joined with G. B. Awalt, surviving husband of Mrs. H. T. Awalt, and their five children in the deed to appellant, all questions of reasonable doubt as to outstanding interests in the Brysons were thereby removed.

These questions as to the marketability of appellant's title being the only ones raised, it being conceded that the contract was in other respects complied with by appellant, the judgment of the trial court is reversed, and judgment here rendered for appellant for the amount sued for.

Reversed and rendered.

### On Motion for Rehearing.

In his motion for rehearing appellee complains of the statement in our opinion that in the deed from the two daughters of S. B. Hurlbut "they recited themselves as the sole heirs of S. B. Hurlbut, deceased." This deed is not shown in the record. The trial court's findings of fact on this point were:

"No deed was made to the land by S. B. Hurlbut, but the deed conveying these 200 acres out of his estate is executed only by his said two children, purporting to be his heirs, but not his sole heirs, and by their said husbands."

We do not deem the erroneous statement, inadvertently made, as material under the circumstances. The fact that these two children conveyed the land 60 years ago, that an affidavit of record more than 30 years recites that they were the only children of S. B. Hurlbut, and that no other heirs or claimants to said land have ever appeared, creates such a strong presumption, we think, that they were in fact the only heirs of S. B. Hurlbut as to remove any reasonable doubt in the matter, or that would deter a reasonably prudent man from accepting such title. These facts disclosed by the record were, we think, such as to remove any reasonable probability that the title of a purchaser would ever be seriously called in question on that account.

With this correction, appellee's motion for rehearing is overruled.

Overruled.