



## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bascom Giles
Commissioner, General Land Office
Austin, Texas

Dear Sir:

Opinion No. O-916
Re: Present condition of certain
leases executed under the Re-
linquishment Act.

You submitted to us copies of the following oil
and gas leases and rental receipts on land covered by the
Relinquishment Act and asked for the opinion of this de-
partment with respect to certain questions which have
arisen in connection with said leases. The pertinent pro-
visions of the three leases and rental receipts are as
follows:

1. A lease dated May 8, 1936, executed by
M. M. Garcia, for himself and as agent for the
State of Texas, lessor, to Mike Jacamen and Elias
Jacaman, lessee, covering 615 acres in Starr
County, Texas, said lease being designated as M.F.
No. 20580. The lease is for a primary term of ten
(10) years and has the following provisions:

"If operations for the drilling of a
well for oil or gas are not commenced on
said land on or before one year from this
date, this lease shall terminate as to both
parties, unless the lessee shall, on or be-
fore one (1) year from this date, pay or
tender to the lessor or for lessor's credit
in the Laredo National Bank at Laredo, Texas,
or its successors, which bank and its succes-
sors are the lessor's agent and shall con-
tinue as the depository of any and all sums
payable under this lease, regardless of change
of ownership in said land or in the oil and
gas, or in the rentals to accrue thereunder,
the sum of Six Hundred Fifteen Dollars ($615.00),
which shall operate as rental and cover the
privilege of deferring the commencement of

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

> drilling operations for a period of one
> year. In like manner and upon like pay-
> ment or tenders, the commencement of
> drilling operations may be further defer-
> red for like periods successively during
> the original term of this lease as fixed
> in the habendum clause hereof."

You sent us a photostatic copy of a receipt dated
May 22, 1939, signed by yourself acknowledging receipt from
D. D. Oil Company, Mission, Texas, of $307.50 rental on State
lease No. 20580, 615 acres, Starr County.

> 2. A lease dated April 7, 1936, executed
> by Dr. M. J. Brooks, et al, and as agent for the
> State of Texas, lessor, to F. Davenport, lessee,
> covering 348 acres, more or less, in Starr County,
> Texas. The lease being designated as M. F. 20602.
> It provides for a primary term of five (5) years
> and contains among others, the following provisions:

> > "If operations for drilling are not
> > commenced on said land on or before one
> > year from this date, the lease shall then
> > terminate as to both parties, unless on or
> > before such anniversary date Lessee shall
> > pay or tender to Lessor or to the credit
> > of Lessor in Atlanta National Bank at At-
> > lanta, Texas, (which bank and its succes-
> > sors are Lessor's agent and shall continue
> > as depository for all rentals payable here-
> > under regardless of changes in ownership of
> > said land or the rentals) the sum of Three
> > Hundred Forty-eight and no/100 ($348.00)
> > Dollars ($348.00) herein called rental),
> > which shall cover the privilege of deferring
> > commencement of drilling operations for a
> > period of twelve (12) months. In like man-
> > ner and upon like payments or tenders annu-
> > ally the commencement of drilling operations
> > may be further deferred for successive
> > periods of twelve (12) months each during
> > the primary term. The payment or tender of
> > rentals may be made by the check or draft
> > of Lessee mailed or delivered to said bank
> > on or before such date of payment."

Said lease further provided:

"The rights of either party hereunder
may be assigned in whole or in part and the
provisions hereof shall extend to the heirs,
successors and assigns, but no change or di-
vision in ownership of the land, rentals, or
royalties, however accomplished, shall oper-
ate to enlarge the obligations or diminish
the rights of Lessee. No sale or assignment
by Lessor shall be binding on Lessee until
Lessee shall be furnished with a certified
copy of recorded instrument evidencing same.
In event of assignment of this lease as to a
segregated portion of said land, the rentals
payable hereunder shall be apportionable as
between the several leasehold owners ratably
according to the surface area of each, and
default in rental payment by one shall not
affect the rights of other leasehold owners
hereunder."

You also furnished us two receipts executed by W. M.
McDonald, who was Commissioner of the General Land Office dur-
ing the year 1938. One receipt was dated April 4, 1938, ack-
nowledging receipt from D. D. Oil Company of $163.00 rental,
Section 920, Certificate 1918, W. M. Pierce, StarrrCounty,
L. 20602. The other receipt, by Mr. McDonald, is dated May 7,
1938, and acknowledges receipt from D. D. Oil Company of $11.00
balance rental, Section 920, Starr County, L. 20602.

3. A lease dated June 13, 1936, from F. Dav-
enport, individually and as agent of the State of
Texas, lessor, to D. D. Oil Company and Slick-
Urschel Oil Company, lessee, covering 146 acres
in the T. R. Wright Survey, Starr County, Texas,
and being designated as M. F. 20350. The lease is
for a primary term of five (5) years and has the
following provision:

"If operations for drilling are not
commenced on said land on or before one
year from this date the lease shall then
terminate as to both parties, unless on
or before such anniversary date Lessee
shall pay or tender to Lessor or to the
credit of Lessor in First State Bank &
Trust Company of Mission, Texas (which
bank and its successors are Lessor's agent
and shall continue as the depository for all

rentals payable hereunder regardless of
changes in ownership of said land or the
rentals) the sum of One Hundred Forty-Six
and No/100 Dollars ($146.00), (herein call-
ed rental), which shall cover the privilege
of deferring commencement of drilling opera-
tions for a period of twelve (12) months.
In like manner and upon like payments or
tenders annually the commencement of drill-
ing operations may be further deferred for
successive periods of twelve (12) months
each during the primary term. The payment
or tender of rental may be made by the check
or draft of Lessee mailed or delivered to
said bank on or before such date of payment."

You furnished us a photostatic copy of a receipt
executed by yourself, acknowledging receipt from the Γ. D.
Oil Company of $73.00 rental on State Lease No. 20350, 146
acres, Starr County, dated June 14, 1939.

In connection with said leases and receipts you ask
us four questions. As we understand your request you desire
an answer to the last three only in the event we answer your
first question in the negative. Since we answer your first
question in the affirmative, we will only set it out herein
and proceed to answer it.

"(1) Did the aforesaid leases expire ipso
facto when the lessee failed to pay the rentals
due the State of Texas on the date due and pay-
able under the terms of said leases?"

You stated in your letter that the landowner's por-
tion of the rental under said leases was paid to them in due
time.

The Relinquishment Act and particularly that portion
of same as incorporated in Article 5368, Revised Civil Statutes
of 1925, authorizes the owner of the land to execute an oil and
gas lease upon such terms and conditions as such owner may deem
best, subject only to the provisions of the Act.

Article 5368, Revised Civil Statutes of 1925, pro-
vides as follows:

"The owner of said land is hereby autho-
rized to sell or lease to any person, firm or
corporation the oil and gas that may be thereon

or therein upon such terms and conditions as
such owner may deem best, subject only to the
provisions hereof, and he may have a second lien
thereon to secure the payment of any sum due him.
All leases and sales so made shall be assignable.
No oil or gas rights shall be sold or leased here-
under for less than ten cents per acre per year
plus royalty, and the lessee or purchaser shall
in every case pay the State ten cents per acre
per year of sales and rentals; and in case of
production shall pay the State the undivided
one-sixteenth of the value of the oil and gas
reserved herein, and like amounts to the owner
of the soil."

We find nothing in the statute which prevents the
owner from executing what is commonly known as an "unless
lease" with provisions similar to those pointed out above in
the leases submitted to us for examination. That being true,
and the terms of the above leases specifically providing that
they would terminate at the end of the first year or any year
during their primary term on failure to drill or pay rental
on the date provided, and the receipts submitted showing that
such rental payments were not made in time, all of the above
leases ipso facto terminated. The first lease listed above,
being No. 20580, terminated on May 8, 1939; the second lease
listed above, being No. 20602, terminated on April 7, 1938,
and the third lease listed above, being No. 20350, terminated
on June 13, 1938, for failure to pay the delay rentals on or
before the dates therein provided. Of course, we are assuming
in all instances that operations for the drilling of a well
for oil and gas were not commenced on the land covered by any
of said leases on or before the dates above mentioned, and
that all of said leases had been assigned to D. D. Oil Company.

It is well settled that in construing and determin-
ing the rights of the parties under an oil and gas lease as
provided for in the Relinquishment Act the contract itself and
the statutes relating thereto must be construed together. See
Empire Gas and Fuel Co. v. State, 47 S. W. (2) 265, Supreme
Court of Texas. There being no provisions in the statute pre-
venting the type of leases in question in so far as the delay
rental feature is concerned, then we must give full effect to

Hon. Bascom Giles, Page 6

the expressed language in the lease contract. We could cite and discuss many authorities holding that the failure to pay delay rentals under an "unless lease" by the time provided in the lease caused the lease to terminate, drilling operations not having been begun.

In the case of Gulf Production Company, et al., vs. Continental Oil Company et al., decided by the Supreme Court of Texas; opinion delivered by Chief Justice Cureton on Nov. 1, 1939, and not yet reported; the court removed all doubt as to the rights of the parties with respect to delay rentals in an "unless lease" by the following language:

"The lease here involved is an 'unless lease," and imposed no obligation on Joiner, Trustee, to either drill or pay; and upon his failure to either drill, pay, or make the deposit in the named bank, no liability of any kind arose in favor of the Turners against him; nothing was due thereunder; there was nothing for Turner to collect; and nothing could be recovered. 31 Tex. Jur. p. 744, sec. 134, Davis v. Bussy, 298 S.W. 656 (writ refused); Weiss v. Claborn, 219 S.W. 884, 887 (writ refused); Stovall v. Texas Co., 262 S.W. 152, 153 (writ refused); McLaughlin v. Brock, 225 S.W. 575, 577; Jones v. Murphy, 253 S.W. 634; Summers on Oil & Gas (Perm. ed.), Vol 2, Sec. 339

"The text of Texas Jurisprudence cited (sec. 184), in part reads:

"'Its is clear from the wording of the "unless" clause that it does not operate to impose any duty upon the lessee either to drill or to pay delay rentals; the matter is entirely optional with him, and the lessor cannot compel him to drill nor oblige him to pay any rentals.' 31 Tex. Jur., P. 744, sec. 134. (Italics ours.)

"* * *

"The result of the failure of Joiner, Trustee, to either begin a well, pay the specified amount of money, or make the named deposit by April 7, 1928, was to ipso facto terminate the lease, and the Turners became reinvested with the entire estate without the necessity of re-entry, declaration, or legal action. 31 Tex. Jur., pp. 744, 745

Hon. Bascom Giles, Page 7

746 sec. 134; Waggoner Estate v. Sigler Oil
Co., 118 Tex. 509, 19 S.W. (2d) 27; Humble
Oil & Ref. Co. v. Davis, 296 S.W. 285, 287
(Tex. Com. App.); Mitchell v. Simms, 63 S.W.
(2d) 371, 373 (Tex. Com. App.); Weiss v. Cla-
born, 219 S.W. 884 (writ refused); Wilson v.
Gass, 289 S.W. 141, 142 (writ refused); Mor-
rissey v. Ambrugey, 292 S.W. 255, 256 (writ refused);
Thornton on Oil & Gas (5th ed.), vol. 1, sec. 124;
Summers on Oil and Gas (Perm. ed.), vol. 2, pp.217,
218, sec. 337; Empire Gas & Fuel Co. v. Saunders,
22 Fed. (2d) 733, 735 (writ of certiorari dismissed),
278 U.S. 581.

"The 'unless' provisions of the lease, there-
fore, are obviously a limitation on the grant;
since 'a limitation determines an estate upon the
happening of the event itself without the neces-
sity of doing any act to regain the estate, such
as re-entry.' Thompson on Real Property, vol. 3,
sec. 2092 (Italics ours.) Summers on Oil & Gas
(Perm. ed.), vol. 2, sec. 337, p. 215; Waggoner
Estate v. Sigler Oil Co., 118 Tex. 509, 519, 520;
Humble Oil & Ref. Co. v. Davis, 296 S.W. 285, 287;
Caruthers v. Leonard, 254 S.W. 779, 782, Morrissey
v. Amburgey, 292 S.W. 255, 256 (writ refused); au-
thorities supra."

Article 5372 of the Revised Civil Statutes of 1925
provides in part:

"If any person, firm or corporation operat-
ing under this law shall fail or refuse to make
the payment of any sum within thirty days after
it becomes due * * * the rights acquired under
the permit or lease shall be subject to forfei-
ture by the Commissioner", etc.

The above quoted provisions of Article 5372 has re-
ference only to sums which become due and for which there is
a liability on the part of the landowner or lessee to pay.
Under the terms of the lease contracts in question the ren-
tal never became due in the ordinary sense of the word in that
the payment thereof could not be enforced. The lessees had to
make the payments in proper time to keep the leases alive for
another year, but they were not required to keep the leases
alive. That being true, Article 5372 had no application to
the rental provided in the above leases. Certainly the leases



did not remain alive until thirty days after the rental payment date, the rental hot having been paid in time and until the Land Commissioner decided to forfeit the leases for failure to pay same in spite of the plain provisions in the leases to the contrary. The lessees could not secure this valuable right without paying a consideration therefor or being obligated in any way. There would be no mutuality between the parties to the extension.

Mr. Summers in his most recent edition on oil and gas discusses this question as follows:

"Remedies of the Lessor for Failure of the Lessee to Drill or Pay Where the 'Unless' Drilling Clause is used

"When the 'unless' drilling clause is used, the lessee does not convenant to drill or pay. The clause relative to the drilling of wells within a stated time, or the periodic payment of money, is used, not for the purpose of fixing a duty upon the lessee to drill or pay, but to state a limitation upon which the lease terminates if these acts are not performed. Consequently, if the lessee fails to drill within the stipulated time, the lessor cannot recover in an action for rent, or recover in an action for damages for failure to drill, for the obvious reason that there is no duty upon which to found such action." Summers' Oil & Gas, Vol. 2, p. 494, Section 452.

See also W. T. Waggoner Estate vs. Sigler Oil Company, 19 S.W. (2d) 27, by Sup. Ct. of Texas; Humble Oil & Refining Co. v. Davis et al, 296 S.W. 295, Com. App. Sec.B; and Gulf Production Co. et al, vs. Continental Oil Co., et al., supra.

The provision of Article 5368 that in every lease the state shall be paid a minimum of ten cents per acre per year rental is complied with in the above leases in so far as the year inquired about, being the year beginning May 8, 1939, in the first lease; the year beginning April 7, 1938, in the second lease, and the year beginning June 13, 1939, in the third lease, for each lease, provides not only that a rental of which the state is to get more than ten cents per acre is to be paid but that it must be paid in advance,

in order for the lease to be in effect for the year. The lessees were not liable for this rental but as we have pointed out they lost their leases by not paying it in time and the leases were not in effect at any time unless the state had received its rental in advance; thus the provisions of Article 5368, supra were followed.

It will be noted that in connection with the discussion of the second lease above, being the M. J. Brooks Lease No. 20602, that one-half of the rental therein provided is $174.00, being the portion to which the state is entitled, that the anniversary date of the lease, being the date on or before which the rental had to be paid in order to keep the lease alive for another year, was April 7, 1938, and that $163.00 was paid before the anniversary date, to-wit, on April 4, 1938, but the balance of $11.00 was not paid until after the anniversary date, to-wit, on May 7, 1938. The lessee not having tendered or paid on or before April 7, 1938, all of the rental provided in the lease, the lease ipso facto terminated by its own terms, assuming that the lease on April 4, 1938, was owned by the same party or parties. This presents a similar situation which was before the El Paso Court of Civil Appeals for decision in the case of Young v. Jones, et al., 222 S.W. 691, wherein the lessee lacked $2.96 paying all of the delay rentals provided for in the lease, the Court used the following language:

"It will be noted the lessee assumed no obligation to commence a well in twelve (12) months from the date of the contract nor did he agree to pay a rental if such a well was not commenced. It was wholly optional with him. In this connection it will be noted also that by the express terms of the contract if such well was not commenced in twelve (12) months or the rental paid, the lease was terminated as to both parties. *,* * The commencement of a well or payment of rental was a condition precedent to a continuance or extension of lessee's privilege after that date. * * * *

"We are of the opinion that under the contract in question where all the rights and privileges granted by the instrument as to all of the land described therein were vested in one person, the optional right to pay rental was indivisible and that such an individual would have no right to pay rental upon a part of the land only. * * * And the failure to pay the whole stiplated amount terminated the entire contract."

Hon. Bascom Giles, Page 10

This question was involved in connection with a surface lease in the case of McCray v. Kelley, et al., 130 S.W. (2) 458. The lease had the following provision:

"It is further provided that if said rental becomes delinquent for as much as three (3) months then and in that event this lease shall become null and void and shall revert immediately to the parties of the first part together with all improvements thereon located."

Judge Graves, who wrote the opinion for the Court of Civil Appeals of Galveston, in discussing the above provision in the lease used the following language:

"Since this lease contained the recited automatic forfeiture clause upon default in payment of rental no election to declare it forfeited was required of appellee. * * *"

"The relied upon tender must have been of the full amount due from the appellant to the appellees at the date thereof to have been valid as such, which was not the case in any of the three instances."

For the reasons discussed herein, it is the opinion of this department that each of the leases in question ipso facto expired when the lessees failed to pay the rental in full on or before the date specified in the lease, and that Article 5372, supra, never had any application to the rentals in question under the facts presented.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By       *D. D. Mahon*

D. D. Mahon
Assistant

DDM:jm       APPROVED DEC 7, 1939

*Gerald C. Mann*
ATTORNEY GENERAL OF TEXAS

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE